(3 App. Div. 500.)

### IASIGI v. ROSENSTEIN.

(Supreme Court, Appellate Division, First Department. April 10, 1896.)

SALE—DELIVERY—CUSTOM.

    A broker's notes of a sale of canary seed, "March steamer shipment from Turkey, * * * goods to be taken from dock on arrival of steamer," indorsed, "Name of steamer reported Aleppo. No arrival, no sale,"—do not require delivery in New York by the Aleppo, it appearing that no steamer ever takes goods directly from Turkey to New York, but that the universal custom, known to the parties, is to transship at Liverpool.

Appeal from trial term, New York county.

Action by Joseph A. Iasigi against Clara Rosenstein. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

H. Aplington, for appellant.
David Keane, for respondent.

INGRAHAM, J. The main question in this action was settled by the court of appeals on a former appeal (see 141 N. Y. 414, 36 N. E. 509), in which it was held that, under the contract as made, a shipment by the steamer Aleppo from Rodosto was all that was required; that it was no part of the contract that the goods should arrive at the port of New York by the same steamer; and the mere fact that the goods were transshipped at Liverpool, and brought from Liverpool to New York by another steamer, did not necessarily allow the defendant to refuse the goods upon their arrival. The court say:

    "The steamer of arrival is not identified. It may or may not be the one first mentioned, or another and different one. If it must mean the Aleppo, and can mean no other, the general term was right; but if it may mean the steamer of arrival, even though not the Aleppo, then there is an ambiguity, a doubt about the real contract intention, which may be solved by proof of custom and usage. I think that is the truth. * * * There are two elements provided: First, the property bought is to be 'good merchantable Smyrna canary seed'; and second, 'March steamer shipment from Turkey.' That ends the description of what was agreed to be bought, for the note goes at

once to the question of price and other details of the contract. Plainly, for some reason, the parties contented themselves with saying simply 'shipment from Turkey,' and omitted to add 'to New York,' or other words indicating a direct or unbroken voyage; and this omission occurs in the formal description of the goods, and where it was not to be expected if a direct voyage was meant. * * * The moment it is shown that there was no steamer sailing direct from Turkey to New York, that all importations from that country by steam came first to Liverpool (or some other intermediate port,) and were there transshipped, and that the goods bought, if transported by steam, must come and could come in no other way, and that both parties and their broker knew the fact, all doubt and ambiguity disappear."

It was proved upon the trial that the Cunard Steamship Company dispatched a steamer from Turkey during the month of March, 1887, which sailed from Rodosto in the month of March for Liverpool; that no steamer was dispatched from Turkey taking goods directly for New York during the month of March, 1887; that the usual and customary mode of shipment of merchandise by steamer from Rodosto to New York is always with transshipment at an intermediate port, and that that intermediate port is Liverpool, England; that no steamer took goods from Rodosto for New York during the year 1887; that the goods in question were shipped by the Aleppo to Liverpool, and transshipped at Liverpool to the steamer Aurania, and delivered in New York; that no steamer ever took goods from Rodosto to New York direct, but always with transshipment for New York at Liverpool; and that the steamer Aleppo was used on regular routes between Rodosto and Liverpool. It was also proved that the goods in question arrived in New York by the steamer Aurania, and were tendered to the defendant, who refused to receive them, on the ground that the goods had not arrived in the vessel named in the contract. And it was proved by the broker in New York who made the sale that the custom in the shipment of goods from Turkey was by steamer to England, and to transship them from there to New York. The defendant offered evidence tending to show that when a contract is silent as to whether a shipment shall be direct or indirect, a direct shipment was intended. But there is no evidence to show that during the year 1887 there was any line of steamships sailing from Turkey to New York, or that in the spring of that year it was possible to procure a direct shipment by steamer from Rodosto to New York. The court left it to the jury to say whether it was the custom or usage of the trade in Turkey to carry goods to Liverpool, or an intermediate port, and there transfer them to a steamer for New York, and instructed them that, if they found such custom and usage to exist, the parties to the contract are to be presumed to have contracted with regard to that usage; and, if they found that such usage was not known to the trade in New York, then they should find a verdict for the defendant, but, if the jury should find that the usage and custom existed, and that it was known in New York, then the parties are presumed to have entered into this contract with reference to that custom, and the plaintiff was entitled to recover. We think that under the decision of the court of appeals that was, if anything, an error in favor of the defendant, and that the finding of the jury was sustained by the evidence.

There were several exceptions to the admission of evidence, but none of them appears to be of substance. The plaintiff was allowed to read an admission made by the defendant upon a former trial, and to this defendant excepted. This is, however, immaterial, as all of the facts included in the admission were proved upon the trial, and were not disputed. The other exceptions do not require notice.

We think no error was committed upon the trial, and that the judgment should be affirmed, with costs. All concur.