JOSEPH A. IASIGI, Appellant, v. CLARA ROSENSTEIN,
Respondent.

Plaintiff through a broker sold to defendant certain parcels of canary seed described in the broker's note as to each parcel as "March steamer shipment from Turkey," the name of the steamer being given. After stating the price and that the seed was to be paid for within a time specified "from date of delivery on dock in New York," each note contained this clause : "Goods to be taken from dock on arrival of steamer when ready for delivery." The parcels were shipped by the steamer named to Liverpool, and there transhipped to another steamer which brought them to New York, where they were tendered to defendants, who refused to accept solely on the ground that the seed was not brought by the steamer named direct to New York. On trial of an action to recover damages plaintiff offered to prove that at the time of sale there was not and never had been freight steamers sailing direct from Turkey to New York, and that the invariable custom was to carry goods to Liverpool, and there transfer them to a steamer for New York. This evidence was excluded. *Held*, error; that the broker's notes did not in explicit terms require a shipment direct in the same steamer from Turkey to New York; that while the steamer of shipment was identified that of arrival was not, and the language of the contract admitted of a doubt as to whether the intent was that both were to be the same, and to solve this doubt the evidence was proper.

*Iasigi* v. *Rosenstein* (65 Hun, 590), reversed.

(Argued February 7, 1894; decided February 27, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 8, 1892, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Circuit dismissing the complaint.

This action was brought to recover damages for defendant's refusal to receive three parcels of canary seed sold to him by plaintiff.

The facts, so far as material, are stated in the opinion.

*David Keane* for appellant. The parties contracted with reference to established customs and usages, which were as much a part of their contract as if, after the words "March

shipment from Turkey," they had written "according to the customary and usual mode of shipment." It was competent to prove the custom and usage, as it did not contradict the written agreement, and simply annexed an incident to the contract which had not been expressed, because it was so well known that it was needless to incorporate it, and the exclusion of this evidence by the court was error. (*Lowery* v. *Russell*, 8 Pick. 360; *Robinson* v. *U. S.*, 13 Wall. 363; *Robertson* v. *N. S. S. Co.*, 139 N. Y. 416.) The error of the General Term consisted in construing the contracts, wholly ignoring any custom or usage in the minds of the parties when they made the contracts. (*McPherson* v. *Cox*, 86 N. Y. 476; *Hinton* v. *Locke*, 5 Hill, 437; 2 Pars. on Cont. [7th ed.] 541; *Hudson* v. *Ede*, L. R. [2 Q. B.] 567.) Evidence of usage has never been considered within the rule which precludes the admission of parol testimony in the interpretation of written contracts. (*Renner* v. *Bank of Columbia*, 9 Wheat. 581; *Coit* v. *C. Ins. Co.*, 7 Johns. 385; *Smith* v. *Willard*, 3 B. & A. 728; *Chaurand* v. *Angerstein*, Peake N. P. 43; *Spicer* v. *Cooper*, 1 Q. B. 424; *Hinton* v. *Locke*, 5 Hill, 437.) An unimportant circumstance not expressed in a contract will not be imported into it by a liberal construction of the language used for the purpose of defeating the contract, especially if there is a reasonable doubt whether the parties intended it to be included in the description of the thing in reference to which they were dealing. (*Cunningham* v. *Judson*, 100 N. Y. 79.)

*H. Applington* for respondent. The complaint herein was properly dismissed. (Benjamin on Sales, §§ 586, 588, 600; *Lovett* v. *Hamilton*, 5 M. & W. 639; *Hill* v. *Blake*, 97 N. Y. 216; *Welch* v. *Gossler*, 89 id. 540; *Shields* v. *Pettie*, 4 id. 122; *Bidwell* v. *Overton*, 26 Abb. [N. C.] 402; *Clark* v. *Fry*, 121 N. Y. 470; *Tobias* v. *Lissberger*, 105 id. 404.) The appeal herein being from the judgment only, no order having been entered denying a motion for a new trial, and no request having been made by the plaintiff to go to the jury, there is

no question of fact for review before this court. (*Matthews*
v. *Meyberg*, 63 N. Y. 656 ; *Dresser* v. *B. F. & M. Ins. Co.*,
47 Hun, 153 ; *Nichols* v. *Martin*, 35 id. 168.)

FINCH, J. The plaintiff, through a broker, sold to the
defendants three parcels of Smyrna canary seed, which the
defendant agreed to buy, but on its arrival refused to receive.
The broker's sale note of the first parcel, with its indorse-
ments, is as follows : " New York, March 14—87. Sold for
$/_c$ Messrs. Iasigi & Co., of Boston, to Messrs. C. Rosenstein &
Co., five hundred bags good merchantable quality Smyrna
canary seed, March steamer shipment from Turkey, at two
and three-quarter (2¾) cents per lb. gross weight for net, less 1
per cent for cash, in 10 days from date of delivery on dock in
New York. No tare — no charge for bags. Goods to be
taken from dock on arrival of steamer, when ready for deliv-
ery. Damaged bags, if any, to be taken at fair allowance.
Name of steamer to be given soon as known. George M.
Black, broker, 60 New st. Indorsed : Accepted, New York,
March 16th, 1887. C. Rosenstein & Co. Second indorse-
ment : Name of steamer reported, Aleppo. No arrival, no
sale. New York, April 22, 87. George M. Black, broker."
The note for the second parcel was in the same form, and
that for the third differed only in the fact that the name of the
steamer, as the Aleppo from Rodosto, was mentioned in the
body of the note. The seed was all shipped in March, on
board the steamer Aleppo, sailing from Rodosto, in Turkey,
but was transshipped at Liverpool from that vessel to the
Aurania, which brought it to New York, where it was ten-
dered to the buyer. There is no question of its identity. It
was the same merchantable Smyrna canary seed which had
been shipped in March by the steamer Aleppo from Turkey.
There is no dispute as to quality or quantity, and the exact
identity is explicitly admitted. It was refused simply and
only because it was not brought by the Aleppo to New York
direct, but was transferred at Liverpool to the Aurania. It is
not now contended that the market or the customer could

appreciate a practical difference, or that there is any meritorious ground for the objection; but it is broadly asserted that the buyer has the right to make his own contract on his own terms, and that these, however unimportant, cannot be disregarded by the courts.

But the plaintiffs offered to show by the broker who negotiated the sale that there was not at the time, and never had been, freight steamers sailing direct from Turkey to New York, but that the invariable custom and usage was to carry the goods to Liverpool and there transfer them to a steamer for New York; and that such custom and usage was well known to all persons engaged in the trade. This evidence was rejected and a verdict rendered for the defendants, which the General Term has affirmed.

That affirmance is put upon the ground that the terms of the contract provide for a shipment on a named steamer from Turkey direct to New York; that an arrival of the goods at the latter port by the Aleppo is essential matter of description and a condition precedent to the buyer's obligation to accept; and that the usage or custom sought to be proved would contradict the terms of the contract and for that reason is inadmissible. There is no doubt of the general rule, and it may be conceded for the present to cover matters of description which are seemingly unimportant, but the question here is as to the application of the rule to the facts.

The broker's notes do not, in explicit terms, require a shipment direct and in the same steamer from Turkey to New York. Such a construction is matter of inference from words which do not necessarily and inevitably involve that inference. The steamer of shipment must be the Aleppo from Turkey. The steamer of arrival is not identified. It may or may not be the one first mentioned, or another and different one. If it *must* mean the Aleppo, and *can* mean no other, the General Term were right; but if it *may* mean the steamer of arrival, even though not the Aleppo, then there is an ambiguity, a doubt about the real contract intention, which may be solved by proof of custom and usage. I think that is the truth.

Observe the language of primary description; that intended to identify the goods and prescribing the date and character of the shipment. There are two elements provided: First, the property bought is to be "good merchantable Smyrna canary seed," and second, "March steamer shipment from Turkey." That ends the description of what was agreed to be bought, for the note goes at once to the question of price and other details of the contract. Plainly, for some reason, the parties contented themselves with saying simply "shipment *from* Turkey," and omitted to add to New York, or other words indicating a direct or unbroken voyage, and this omission occurs in the formal description of the goods, and where it was not to be expected if a direct voyage was meant. The note then passes to other details. One is "goods to be taken from dock on arrival of steamer when ready for delivery." This sentence, most certainly, was no part of the description of the goods bought, and was not intended to qualify or affect that description. It merely made a delivery on the dock, from the steamer having the goods, a sufficient delivery. It does not say what steamer, or dictate that it must be the Aleppo. The final provision, "Name of steamer to be given soon as known," undoubtedly refers back to steamer of shipment. But it is said that in all the terms of the broker's note but one steamer is referred to. That, however, is the precise question. *Was* only one referred to? The language admits of the possibility that two were referred to; the steamer of shipment and the steamer of arrival; and it is in view of that possible doubt as to the real purpose and intention of the parties that the evidence of usage and custom was offered. The moment it is shown that there was no steamer sailing direct from Turkey to New York, that all importations from that country by steam came first to Liverpool and were there transshipped, and that the goods bought, if transported by steam, must come and could come in no other way, and that both parties and their broker knew the fact, all doubt and ambiguity disappears. We see at once that the provision for delivery, which says simply "steamer," does not and cannot

mean the Aleppo, was not so intended or understood, but refers to the steamer of arrival after the necessary and contemplated transshipment at Liverpool. The proof does not contradict the note : it simply explains it, and enables us to choose between two possible constructions, either of which the instrument will bear.

We think the evidence should have been admitted, and that for the error in excluding it the judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.