INGRAHAM, J.
The main question in this action was settled "by the court of appeals on a former appeal (see 141 N. Y. 414; 57 St. Rep. 756), in which it was held that, under the contract as •made, a shipment by the steamer Aleppo from Rodosto was all that was required; that it was no part of the contract that the goods should arrive at the port of New York by the same steamer; -and the mere fact that the goods were transshipped at Liverpool, and brought from Liverpool to New York by another steamer, did *680 not necessarily allow the defendant to refuse the goods upon their arrival. The court say :
'“The steamer of arrival is not identified. It may or may not-be the one first mentioned, or another and different one. If it must mean the Aleppo, and can mean no other, the general term was right; but if may mean the steamer of arrival, even though not the Aleppo, then there is an ambiguity, a doubt about the-real contract intention, which may be solved by proof of custom and usage. I think that is the truth. * * * There are two elements provided: First, the property bought is to be ‘good merchantable Smyrna canary seed ; ’ and, second, ‘ March steamer shipment from Turkey.’ That ends the description of what was-agreed to be bought, for the note goes at once to the question of price and other details of the contract. Plainly, for some reason, the parties contented themselves with saying simply ‘shipment from Turkey,’ and omitted to add ‘to Hew York,’ or other words indicating a direct or unbroken voyage; and this omission, occurs in the formal description of the goods, and where it was not to be expected if a direct voyage was meant. * * * The moment it is shown that there was no steamer sailing direct fromTurkey to Hew York, that all importations from that country by steam came first, to Liverpool (or some other intermediate port), -and were there transshipped, and that the goods bought, if transported by steam, must come and could come in no other way, and that, both parties and their broker knew the fact, all doubt and ambiguity disappear.”
It was proved upon the trial that the Canard Steamship Company dispatched a steamer frorn Turkey during the month of March, 1887, which sailed from Rodosto in the month of March for Liverpool; that no steamer was dispatched from Turkey taking goods directly for Hew York during the month of March, 1887: that the usual and customary mode of shipment of merchandise by steamer frorn Rodosto to Hew York is always by trans* shipment at an.intermediate port, and that that intermediate pon is Liverpool, England; that no steamer took goods from Rodost»for Hew York during the year 1887; that the goods in question were shipped by the Aleppo to Liverpool, and transshipped at, Liverpool to the steamer Aurania, and delivered in Hew York;. that no steamer ever took goods from Rodosto to Hew York direct,, but always with transshipment for Hew York at Liverpool; and that the steamer Alleppo was used on regular routes between Rodosto and Liverpool. It was also proved that the goods in question arrived in Hew York by th,e steamer Aurania, and were tendered to the defendant, who refused to receive them, on the ground that the goods had not arrived in the vessel named in the contract. And it was proved by the broker in Hew York w.ho made the-sale that the custom in the shipment of goods from Turkey was. by steamer to England, and to transship them from there to Hew York. The defendant offered evidence tending to show 'that, when a contract is silent as to whether a shipment shall be direct or indirect, a direct shipment was intended. But there is no evidence to show that during the year 1887 there was. any line of *681 steamships sailing from Turkey to New York, or that in the spring-of that year it was possible to procure a direct shipment by steamer from Eodosto to New York. The court left it to th’e jury to say whether it was the custom or usage of the trade in Turkey to carry goods to Liverpool, or an intermediate port, and there transfer them to a steamer for New York, and instructed them that, if they found such custom and usage to exist, the parties to the contract are to be presumed to have been contracted with regard to that usage; and if they found that such usage was not known to the trade in New York, then they should find a verdict for the defendant, but, if the jury should find that the usage and custom exissed, and that it was known in New York, then the-parties are presumed to have entered into this contract with reference to that custom, and the plaintiff was entitled to recover. We think that under the decision of the court of appeals that was an error in favor of the defendant, and that the finding of the jury was sustained by the evidence.
There were several exceptions to the admission of evidence, but none of them appears to be of substance. The plaintiff was allowed to read an admission made by the defendant upon a former trial, and to this defendant excepted. This is, however, immaterial, as all the facts included in the admission were proved upon, the trial, and were not disputed. The other exceptions do not require notice.
We think no error was committed upon the trial, and that the judgment should be affirmed, with costs.
All concur.