## MATTHEW SMITH TEA, COFFEE & GROCERY CO. v. LAMBORN & CO. PENNSYLVANIA MILK PRODUCTS CO. v. SAME. BRENNER & PERLHOFF CO. v. SAME.

### (District Court, S. D. New York. July 18, 1921.)

Sales ⊂⊃83—Seller held to have right to substitute vessel under contract for delivery of sugar.

Under a contract for sale of sugar by weight and quality, to be shipped from Java within a specified period by "steamer or steamers" to Philadelphia, "names of such steamers to be declared later," the seller *held* to have the right to substitute another steamer for one provisionally declared, where the substituted vessel sailed within the time specified.

At Law. Actions by the Matthew Smith Tea, Coffee & Grocery Company by the Pennsylvania Milk Products Company, and by the Brenner & Perlhoff Company against Lamborn & Co. On motions by plaintiffs to strike out defense. Denied.

These actions were brought to recover alleged damages for breach of contract, in that the defendant company, having declared the steamer Chifiku Maru, afterward declared the steamer West Cheswald as a substitute steamer, and tendered the sugar from the latter steamer. The defendants set up in their answers the reasons for the substitution, and showed that the earlier declared steamer had been obliged to put into Port Said for repairs, and that the shipment on the West Cheswald met the requirements and specifications of the contract. The plaintiffs moved to strike out the defense as insufficient in law.

Hunt, Hill & Betts, of New York City (Leavitt J. Hunt, of New York City, of counsel), for the motions.

Louis O. Van Doren, of New York City, opposed.

LEARNED HAND, District Judge (after stating the facts as above). Under the state practice the motion would be denied, because none of the articles of the answer objected to could possibly embarrass the plaintiff on a trial. The state courts are always loath to undertake the reformation of pleadings, by paring and pruning, for the same reasons which would have deterred a lesser hero than the son of Alcmene from undertaking his twelve labors. However the plaintiff has presented the substance of the case upon this motion, and cannot complain if I decide it upon the merits against it.

None of the cases cited appear to me to touch the situation, except Thornton v. Simpson, 6 Taunt. 556, and two decisions in state courts upon this very contract. The whole case turns upon whether the defendant had the right to substitute the West Cheswald for the Chifiku Maru. I think that it had. The contract was for the sale of sugar by weight and quality, to be shipped from Java, August-September, 1920, by steamer or steamers to Philadelphia, "names of such steamers to be declared later. Should steamer or steamers declared against this contract fail to arrive at port of destination for any cause, sellers are relieved of responsibility under this contract." Now, it is clear that, without the clause just quoted, the seller would have been obliged generally to deliver. The sale was of fungibles, and not of a cargo, already loaded on a given ship. Moreover, the seller might withhold his

declaration of the steamers for as long as he chose. The case is not like Steinhardt v. Bingham, 182 N. Y. 326, 75 N. E. 403, where the declaration had to be within five days after bill of lading received. However, for as long as he did withhold, he remained generally liable. His declaration limited his obligation by excusing him in case the declared steamer should "fail to arrive." Hence the defendant is right in saying that the clause was for the seller's benefit only. Neill v. Whitword, 18 C. B. (N. S.), 435; Harrison v. Fortlage, 161 U. S. 57, 64, 16 Sup. Ct. 488, 40 L. Ed. 616. Clearly under this contract the buyer could have no interest in the particular ship on which the sugar arrived, so long as it was shipped "August-September."

I do not find it necessary to hold that, having once unconditionally declared a steamer, the seller could substitute another in every conceivable circumstance. For example, if the Chifiku Maru had been unconditionally declared, and then lost, it perhaps would be reasonable that the buyer should be excused, because otherwise the seller could hold him if the price fell, though he could not hold the seller if it rose. Yet, even then, it must be remembered that the contract does not read, "No arrival, no sale." It is specifically a release only of the seller. However that may be, the Chifiku Maru was not lost, and was in no danger of loss, and the case seems to be within Thornton v. Simpson, supra, as well as the decisions on this contract of Mr. Justice Sawyer and Mr. Justice Shoemaker. If these be right, the seller could substitute, unless because the West Cheswald being nearer port, was less likely to be lost. That appears to me a fanciful distinction, even assuming that the seller would not have had the right to put another cargo to the buyer, had the Chifiku Maru been actually lost. Hence I should think that, even if the seller had made an unconditional declaration, if Thornton v. Simpson, supra, be still law, he might substitute as he did, the buyer's position being in effect unchanged.

But the seller never made an unconditional declaration and the point does not arise. In his letter of August 30th, he expressly reserves the right to substitute another vessel. This he had the right to do, because he was only to declare "later." His letter amounted to saying that he then intended to ship by Chifiku Maru and Washington Maru, but might later decide to ship by another vessel. The buyer, having no right to a declaration at any given time, lost nothing by this. Nor did his letter of September 29th change this situation. The only "declaration" under the contract was on August 30th, "We hereby declare," etc. The second merely specified the time of sailing of the Chifiku Maru, already provisionally declared. It is to be read with the first letter, and is not to be taken as modifying its terms. The first alone was an act under the contract. On December 13th, when the substitution was made, I think the reservation contained in the original declaration was still in effect.

As to the custom pleaded in the twenty-ninth article of the answer, it seems to me so clear that it does not contradict the contract, that I need do no more than allude to it.

The defense is entirely good in law, and the motion is denied for that reason.