# H. O. Wilbur & Sons, Inc., Appellant, *v.* Lamborn et al.

*Contract—Sale—Delivery—Declaration of steamships—Substitution of one steamship for another.*

1. Where a contract for the sale of merchandise to be shipped from a foreign port and delivered to the purchaser at a port in this country, provides that the name or the names of the steamers is to be declared later, but the time for such declaration is left indefinite, and subsequently the seller declares two steamers, reserving right to name substitutes, and thereafter the purchaser is informed that the goods are on one of the steamers named, but the purchaser makes no objection to the substituting reservation nór indicates that he did not consider the second letter a final declaration, he cannot afterwards claim that the original declaration was the final and only one made.

2. In such case, if the steamer on which the goods were shipped is unavoidably delayed, the sellers may divert from another port a steamer carrying goods of exactly the same kind and quality and tender delivery in the purchaser's port; and especially is this so where such delivery gave the purchaser the benefit of obtaining the goods at an earlier date.

3. If the goods had been transshipped from one steamer to another, the purchaser would have been bound to accept them.

4. The subject-matter of such a contract is the sale of the goods, and the part thereof which provides for delivery in a certain way is incident to the sale, and unless a party is harmed by the manner in which delivery is made, such part ought to give way to the common intent of the contract, which is the sale and delivery of the goods.

5. Not decided whether a provision as to declaration of steamers is for the seller's benefit alone.

Argued January 30, 1923. Appeal, No. 236, Jan. T., 1923, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1920, No. 3249, on verdict for defendants in case of H. O. Wilbur & Sons, Inc., v. Arthur H. Lamborn et al., trading as Lamborn & Company. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

480 H.O.WILBUR&SONS,INC.,Appel., *v.* LAMBORN et al.

Assumpsit on irrevocable letters of credit. Before
SHOEMAKER, J.

The opinion of the Supreme Court states the facts.

Judgment on directed verdict for defendants. Plain-
tiff appealed.

*Error assigned* was refusing motion for judgment
n. o. v., quoting record.

*Francis B. Bracken,* with him *Clement B. Wood* and
*Morgan, Lewis & Bockius,* for appellant.—The tender of
sugar from the "West Cheswald" was not a compliance
with the contract and appellants were justified in refus-
ing it.

In mercantile contracts every stipulation in the con-
tract is material and important. The nonperformance
of any stipulation by the seller entitles the buyer to re-
ject the tender: Norrington v. Wright, 115 U. S. 188;
Filley v. Pope, 115 U. S. 213; Bowes v. Shand, 2 App.
Cas. 455; Johnson v. MacDonald 9 M. & W. 600; Har-
rison v. Fortlage, 161 U. S. 57; Dorrance v. Barber, 262
Fed. 489.

The declaration of the steamer is a material stipula-
tion in the contract, and performance of the stipulation
by the seller in accordance with the terms of the contract
is a condition precedent: Nickoll & Knight v. Ashton, 2
K. B. 126; Thornton v. Simpson, 6 Taunton 556; Busk
v. Spence, 4 Campb. 329; Graves v. Legg, 9 Exch. 709;
Gilkes v. Leonino, 93 Eng. C. L. 485; Reuter v. Sala
(1881) 48 L. J., C. P. 492; Steinhardt v. Bingham, 182
N. Y. 326; Gath v. Lees, (1864) 3 Hurls. & C. 557.

*George Wharton Pepper,* of *Henry, Pepper, Bodine &
Stokes,* with him *Van Doren, Conklin & McNevin,* for
appellee.—The provision relating to declaration of steam-
ers was not a condition precedent but was an inde-
pendent stipulation for the benefit of the seller: Penna.
Sugar Co. v. Czarnikow-Rionda Co., 245 Fed. 913; Neill

v. Whitworth, 114 Eng. C. L. 18, C. B. N. S. 435 (1865); Harrison v. Fortlage, 161 U. S. 57.

The substitution of one steamer for another by the seller at any time before delivery, when made for a reasonable cause, is not a breach of the stipulation that names of steamers shall be declared later: Thornton v. Simpson, 6 Taunt. 556; Iasigi v. Rosenstein, 141 N. Y. 414; Cunningham v. Judson, 100 N. Y. 179.

There never was an unconditional declaration prior to the declaration of the "West Cheswald," and hence there was no alteration of a previous declaration: Matthew Smith Tea, etc., Co., 276 Fed. 325.

OPINION BY MR. JUSTICE SCHAFFER, February 19, 1923:

This action was brought by plaintiff to recover the sum of $71,344, being the amount of two irrevocable letters of credit established by it in defendants' favor at the Philadelphia National Bank, which the latter collected, and which represented the price of 1,500 bags of sugar purchased by plaintiff from defendants and shipped by them from Java. At trial, the court directed a verdict for defendants; from the resulting judgment, plaintiff appeals.

The dispute between the parties centers in the interpretation of two contracts covering the sale and shipment of the sugar from Java to its port of delivery, Philadelphia. After reciting that defendants had sold to plaintiff the quantity of sugar named, the price and terms of payment, the contracts provide: "Shipment to be made during August-September, 1920, at option of the sellers from Java by steamer or steamers to Philadelphia, Pa. Names of such steamer or steamers to be declared later. Should steamer or steamers declared against this contract fail to arrive at port of destination for any cause, sellers are relieved of responsibility under this contract. In case of damage to the sugars on steamer in transit to Philadelphia, Pa., preventing seller from making full delivery, sellers will deliver under this con-

tract to each of the purchasers of the sugars aboard said steamer a proportionate part of the sound packages. .....:..Should any unforeseen circumstances......prevent shipment within the time specified above, the buyer has the option of cancelling such portion of this contract affected by such delay or taking the sugar so affected for later shipment, without claiming damages, and buyer's decision is to be given immediately on advice from sellers that delay has occurred. In the event of such cancellation by the buyer, the seller shall be under no further obligation to the buyer under this contract."

In accord with the terms of the writings, defendants made declarations in two letters to plaintiff, dated August 30, 1920, saying, "We hereby declare that the steamships 'Chifuku Maru' and 'Washington Haru' *or substitutes* will carry the [in one instance] 500 [in the other] 1,000 bags of Java Sugars purchased by you under contract dated [giving the respective dates]."

The purchasing agent of plaintiff testified, that shortly after the receipt of these letters he had a conversation with one of the defendant firm, in which he called attention to the two steamers declared "and asked for a definite declaration. I told him we were interested and wanted a definite declaration." Nothing was done by appellees in response to this, but three weeks later they wrote appellant they had received advices that the steamship "Chifuku Maru carrying your Javas......sailed from Java on August 22d and is due to arrive the latter part of October." Plaintiff would have this letter taken as a definite and unalterable declaration, but we cannot so regard it; it simply conveyed information. The original declaration stood as the only one made, with the right reserved therein to name "substitutes." If appellant wished to eliminate this privilege, it should have notified defendants to that effect in order that they might act as they deemed wise under the circumstances. It had not, in the first instance, made objection to a substitutionary declaration and did not, after receiving the letter

containing the information that the sugar was on the Chifuku Maru, indicate in any way that it considered this a final one.

Subsequently defendants advised plaintiff that the Chifuku Maru was not expected to arrive before the last half of November, and on December 13th, "that the steamer 'Chifuku Maru,' previously declared......has been unavoidably delayed, owing to accident to her machinery, making it necessary to stop at Port Said, and at this writing we have received no definite information as to the sailing date from that port. In consideration of the above-mentioned circumstances, we hereby declare the steamer 'West Cheswald,' carrying the same quality sugars and having made the same shipments from Java, in fulfillment of your contract, which steamer is expected to arrive in Philadelphia this week." The testimony disclosed that the last-named steamer was at that time in the vicinity of Bermuda bound for New York. She was diverted in her voyage from that port to Philadelphia by wireless. It is admitted the sugar she carried was identical in kind and quality with that on the Chifuku Maru. On December 14th, plaintiff wrote defendants, acknowledging receipt of their previous day's letter, and stating they had "definitely declared our......Java white sugars......as shipped per steamship 'Chifuku Maru.' We can accept no alterations, further declarations or tenders under these contracts." Two days later, appellees advised appellant that the West Cheswald was in the port of Philadelphia, with sugars to apply against the contracts, and, on December 21st, the latter notified the former that it would refuse acceptance. On receipt of this notice, appellees proceeded to collect the amount covered by the letters of credit. The Chifuku Maru arrived at Philadelphia with her cargo on February 4, 1921.

Appellant, conceding that the facts are undisputed, and that the trial judge properly treated the question as one involving the construction of the contracts, thus

sums up the controversy: "The question involved is whether the appellees, having made a declaration of one vessel in accordance with the provision in the contracts requiring the declaration of the steamer or steamers carrying the appellant's sugars, were at liberty to declare at any time before delivery another vessel carrying shipments originally destined to another port, and tender delivery from the latter vessel."

There has been a wealth of research and learning brought to bear on the controversy by counsel who presented their respective sides. All of the American and English cases throwing any light on it, and there are not a few of them, have been called to our attention. Appellant contends that the declaration of the steamer is a material stipulation in the contracts, and performance of this stipulation, by the seller, in accordance with its terms, is a condition precedent to a completed sale and delivery. The major proposition of appellee is, that the provision in the contract as to declaration of the steamer is for the sellers' benefit alone, in order to absolve them from liability in the event of the loss of the shipment. Authority can be found for this position and the question is a very interesting one, but, under the circumstances disclosed by the record, it is not essential to so hold, in order to sustain the position of the trial judge in directing a verdict for defendant, which we think was proper.

The language of the contracts as to the declaration of the steamer differs from that in any other case to which we have been referred. Here, the time for declaration was indefinite. The contract says, "names of such steamer or steamers to be declared later." In all the other cases involving a declaration of the vessel, there was a time limit fixed as to when the declaration should be made. In Steinhardt v. Bingham, 182 N. Y. 326, the declaration has to be within five days after bill of lading received; in Norrington v. Wright, 115 U. S. 188, "as soon as known by" the sellers; in Graves v. Legg, 9 Exch. 709,

as soon as the wools were shipped; in Reuter v. Sala, 48 L. J. C. P. 492, within sixty days of the date of the bill of lading; in Texas Co. v. Hogarth Shipping Co., 256 U. S. 619, on or before March 15th; in Thornton v. Simpson, 6 Taunton 556, as soon as known; in Busk v. Spence, 4 Campbell 329, as soon as the shipper knew the name; in Gilkes v. Leonino, 93 Eng. C. L. 485, in the next or succeeding mail.

In almost all the cases where a declaration of the ship was to be made, the purpose was to enable the buyer to calculate the time of arrival and make the necessary financial arrangements; this situation does not exist in the present case, because the arrival could not be calculated, as there was no provision in the contract as to any specific time when the declaration should be made, and so far as the financial arrangements were concerned, it required them to be made within five days after its date, through the medium of the irrevocable letters of credit.

However, we think the case should not be determined on the narrow ground of the time of declaration alone, but on the broader proposition, that, having declared the Chifuku Maru, and that ship having met with the difficulties of continuous voyage which the correspondence discloses, it was the right of defendants, in carrying out their obligation to perform the contract, to deliver to defendants sugar of similar kind by another vessel. As this sugar was shipped within the period stipulated in the contract, and received at the port of destination at a time reasonably near that in which it would have arrived had the voyage of the Chifuku Maru not been interrupted, it is apparent defendants were acting in entire good faith, and in an endeavor to meet their undertaking, and that they did perform as they had agreed to; this being so, plaintiff was in duty bound to accept the shipment when it arrived in the substituted steamer. This is further made manifest when we take into account that appellant would have been required to accept the sugar on the Chifuku Maru when it reached its destina-

tion, on February 4th. By the substituted vessel, it had the opportunty to get the commodity contracted for at an earlier date, December 17th. Plaintiff's refusal to take this shipment was based, not upon any inferiority in the merchandise, but solely because of its delivery from the West Cheswald instead of the Chifuku Maru. As it would have been bound to accept the sugar on the Chifuku Maru when that ship arrived on February 4th, the defendant has actually suffered no damage. The change of declaration to the West Cheswald was really for appellant's benefit, as thus it was enabled to sooner obtain its purchase.

It cannot be doubted that had the sugar on the Chifuku Maru been transshipped to another vessel, and been by it delivered, plaintiff would have been bound to accept delivery. This was ruled in Harrison v. Fortlage, 161 U. S. 57. That case has an important bearing on the one under consideration, because what took place with reference to the sugar in question, while not actually, was, in result, the equivalent of a transshipment. It holds that a contract for the sale of goods, to be shipped during a particular month from the Philippines to Philadelphia, by a named steamer, at a certain price ex ship, "no arrival, no sale," with a further provision, that if, by any unforseen accident, the named vessel is unable to load, and no other steamer can be procured within the month, the contract is to be void, does not require the goods to be carried to their destination by the vessel named, but is satisfied if the goods are put on board of her at the Philippines, at the time specified, and, upon her being so injured on the voyage by the perils of the sea as to be unable to carry them, they may be transshipped and forwarded by another steamer to the port of delivery. It could not be seriously contended that, had the Chifuku Maru and West Cheswald been proceeding together at the time of the injury to the former's machinery, the Chifuku Maru would have had to transship sufficient of her cargo to the West Cheswald in order that defendants

might meet the requirements of their contract, when the latter vessel had on board precisely similar merchandise which could be delivered to plaintiff. In the realm of the practical, what difference could it make to plaintiff, so far as delivery is concerned, that the same sugar, shipped in time, was tendered to it on another steamer?

The case of Thornton v. Simpson, 6 Taunton 556, is more nearly similar to the case in hand than any other brought to our notice; there it was decided that, under a contract to sell 50 tons of hemp at a price per ton, to be shipped from St. Petersburg or Cronstadt in June or July, the ship to be declared as soon as known, in case the ship should not arrive before December 31st, the contract to be void, the seller was not bound to send all by one ship and having announced more to be coming by one ship then the fact was, he was at liberty to declare the residue to be coming by other ships.

We think the trial judge adequately and properly summed up the situation when he said: "The subject-matter of this contract is the sale of sugar. That is the material thing in it, and that part of the contract which provides for delivery in a certain way, being transported by a vessel, is an incident of that sale and delivery, and unless somebody was harmed by reason of the manner in which delivery was made, that part ought to give way to the common intent of the contract, which is the sale of sugar and its delivery."

Some point is made by appellant of the fact that the West Cheswald was originally bound for New York and diverted to Philadelphia. We think this diversion was of no consequence, under the contract. Plaintiff was concerned only with the delivery of the merchandise, that there should be no delay in its arrival. It was delivered as a result of a continuous voyage from Java to Philadelphia. These contracts do not say that the sugar shall be shipped by continuous voyage from place of shipment to destination, what they provide is that the shipment shall be "from Java by steamer or steamers to Philadel-

phia"; even if they did so provide, we might not be prepared to hold,—under the facts here appearing, that the voyage was in reality a continuous one, although the first destination of the ship was New York,—that this latter circumstance would avoid the contract.

Notwithstanding the able presentation of appellant's contention by counsel who argued it, we remain unconvinced that the disposition of the case by the court below was wrong.

The assignments of error are overruled and the judgment is affirmed.