MATTHEW SMITH TEA, COFFEE & GROCERY CO. v. LAMBORN et al. PENNSYLVANIA MILK PRODUCTS CO. v. SAME. BRENNER et al. v. SAME.

(Circuit Court of Appeals, Second Circuit. February 8, 1926.)

Nos. 107–109.

1. Sales 54—Sales contract is construed according to parties' intention.

Mercantile sales contract is construed according to parties' intention, and court must discover by language used what warranties or conditions precedent were created.

2. Sales ⊚⇒83—Under contract for sale of sugar by "steamer or steamers," and "names of such steamers to be declared later," seller can substitute another steamer for one provisionally declared, where substituted vessel carried sugar, which was shipped within time specified.

Under contract for sale of sugar to be shipped from Java within specified time by "steamer or steamers" to Philadelphia, "names of such steamers to be declared later," seller can substitute another steamer for one provisionally declared, where substituted vessel carried sugar, which was shipped within time specified.

In Error to the District Court of the United States for the Southern District of New York.

Actions by the Matthew Smith Tea, Coffee & Grocery Company, by the Pennsylvania Milk Products Company, and by Louis Brenner and others, trading as L. Brenner, Sons & Perloff, against Arthur H. Lamborn and others, trading as Arthur H. Lamborn & Co. Judgments for defendants, and plaintiffs bring error. Affirmed.

See, also, 276 F. 325.

These cases were tried together, and, except for variations in names and quantity of goods concerned, are alike. In all both parties moved for a directed verdict. The court granted the defendants' motions, whereupon plaintiffs took these writs. The facts productive of the points of law involved are found in the evidence relating to the action of the Smith Company, as follows:

In April, 1920, Lamborn and Smith Company entered into a written contract for the sale by Lamborn of a considerable quantity of Java white sugar, concerning which it was provided that payment was to be made "by net cash on presentation of sight draft with invoice and bill of lading attached in New York. Buyers to open * * * confirmed irrevocable letter of credit in favor of Lamborn & Co." at a named bank.

The written contract continued thus:

"*Shipment.*—Shipment to be made during August-September, 1920, at option of the sellers from Java by steamer or steamers to Philadelphia, Pa. Names of such steamer or steamers to be declared later. Should steamer or steamers declared against this contract fail to arrive at port of destination for any cause, sellers are relieved of responsibility under this contract."

During August-September, 1920, Lamborn shipped from Java sugar of the kind described and in amount sufficient to fulfill the bargain with Smith Company, on several steamers, to wit, at least, the West Cheswald and the Chifuku Maru.

On August 30, 1920, Lamborn advised Smith Company in writing thus: "We hereby declare that the steamers Chifuku Maru and Washington Maru, *or substitutes,* will carry" the sugar contracted for by Smith Company.

On September 29, 1920, Lamborn advised Smith Company in writing thus: "We have received advices that the steamship Chifuku Maru, carrying your Javas, * * * sailed from Java August 22 and is due to arrive the latter part of October."

Chifuku Maru broke down, had to stop at Port Said, and was subjected to very great delay, though she ultimately arrived in Philadelphia, having on board the sugar that had been intended for Smith Company and the other plaintiffs in error.

Owing to the delay in repairing the Chifuku Maru, Lamborn notified Smith Company in writing on December 13, 1920, that, owing to the delay aforesaid, "we hereby de-

clare the steamer West Cheswald, carrying the same quality of sugar and having made the same shipment from Java, in fulfillment of your contract, which steamer is expected to arrive in Philadelphia this week."

The Cheswald did arrive with the same kind of sugar on board, shipped at the same time, and Smith Company refused it; but, under the irrevocable credit above referred to, Lamborn, producing proper shipping documents, was paid, and Smith Company brought this action to recover the sale price from Lamborn, on the ground that Lamborn had not fulfilled his contract.

By written notification before suit, and by pleading, Smith Company's sole assigned reason for refusing sugar and suing for the sale price is that, having declared Chifuku Maru as carrying Smith Company's sugar, Lamborn had no right to change the declaration and tender sugar ex West Cheswald.

Hunt, Hill & Betts, of New York City (Leavitt J. Hunt and H. Victor Crawford, both of New York City, of counsel), for plaintiffs in error.

Van Doren, Conklin & McNevin, of New York City (Louis O. Van Doren and Alfred C. B. McNevin, both of New York City, and Edward S. Bentley, of Lawrence, N. Y., of counsel), for defendants in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Lamborn sold Java sugars f. o. b. Philadelphia to many persons, and apparently exacted as many irrevocable credits covering payment to him for the same. When the sugars on the West Cheswald arrived, goods for which buyers were willing to pay 22 cents a pound at contract date would fetch no more than 11 cents.

This fact does not affect the legal questions involved, but it does explain why consignments of sugar on the Chifuku, Washington, and Cheswald gave rise to a rather remarkable mass of litigation. Efforts to avoid accepting and/or paying for these sugars have taken several forms: First, suit by the vendee to get back from Lamborn the sale price obtained by him from the banks issuing the irrevocable credits. This case is of that sort, and so were Wilbur & Sons, Inc., v. Lamborn, 276 Pa. 479, 120 A. 478, 27 A. L. R. 160, and Lamborn v. Hardie Co. (C. C. A.) 1 F.(2d) 679. The second form of attack consisted in a vendee's suing to prevent his own bank paying under its own irrevocable letter of credit. J. Hungerford Smith Co. v. Lamborn (Sup.) 200 N. Y. S. 292, and Williams Ice Cream Co. v. Chase, etc., Bank, 210 App. Div. 179, 205 N. Y. S. 446, are such cases. In a third form of litigation Lamborn brought suit against the credit-issuing bank, which on varying grounds had refused the promised payment. Such cases are Lamborn v. Lake Shore, etc., Co., 196 App. Div. 504, 188 N. Y. S. 162, and National Bank, etc., v. Lamborn (C. C. A.) 2 F.(2d) 23, 36 A. L. R. 509.

In every instance, except the last, Lamborn has prevailed. In that case the credit, according to the report, required "shipment to be made during August-September, 1920, at option of the sellers from Java by steamer or steamers to Philadelphia." There, as here, the sugar tendered f. o. b. Philadelphia was ex West Cheswald, but as that steamer had originally sailed from Java for New York, and been diverted to Philadelphia by radio, the Fourth Circuit held that the credit-giving bank was justified in refusing payment, because there had been no shipment from Java to Philadephia.

There is also a report of the present litigation, on plaintiff's motion to strike out certain defenses. Matthew Smith, etc., Co. v. Lamborn (D. C.) 276 F. 325. On the present writs we are urged, first, to construe the contract between vendor and vendee as the Fourth Circuit did that between vendor and bank; and, second, to sustain the contention pleaded below by the plaintiffs in error—i. e., that after shipment of sugar satisfying shipment on the Chifuku, Lamborn was powerless to tender sugars shipped on the Cheswald.

As to the first point, we could not yield to the argument, even if we wished to. This is not a suit between the vendor and the credit-issuing bank; the existence of that credit is immaterial to the present action. We note, however, that the credit letter in this record does not contain the proviso above quoted from the Fourth Circuit case; and, even if it were there, we could not consider it as a defense, because it was not pleaded nor suggested as a reason for Smith's refusing the sugar.

This suit does not rest on the credit in any way. It is not denied that Lamborn was entitled to his money *under the credit*, but he is alleged to have gotten it only after he had broken his sales contract. There were two quite distinct contracts, one for the sale and one for payment by another person. As was said in Lamborn v. Lake Shore, etc., Co., supra, at page 506, 188 N. Y. S. 163: "The authorities are uniform to the effect that this letter of credit constitutes the sole contract

with the shipper, and that the bank issuing the letter of credit has no concern with any question which may arise between the vendor and vendee of the merchandise for the purchase price for which the letter of credit was issued." Consequently we are not required to express assent or disagreement with the opinion of the Fourth Circuit.

[1] On the other question, the single issue arising on the pleading, we are of opinion that Lamborn had good right to tender sugar ex West Cheswald, and have little to add to the opinion of Hand, J., in 276 F. 325. The sale contract was mercantile, is to be construed according to the intent of the parties, and we must discover by the language used what warranties or conditions precedent were created. Dorrance v. Barber & Co. (C. C. A.) 262 F. 489.

There was no warranty that the same steamer would carry Smith's sugar all the way from Java to Philadelphia. By express agreement it might have gone on several vessels, and by reasonable construction been forwarded by another steamer from an intermediate port; e. g., the Chifuku could have transhipped at Port Said. Harrison v. Fortlage, 161 U. S. 57, 16 S. Ct. 488, 40 L. Ed. 616. The naming of the Chifuku as the carrying vessel bore no resemblance to the naming of a vessel to fulfill a charter party, where the vessel itself was the subject-matter of agreement. Texas Co. v. Hogarth, etc., Co., 256 U. S. 619, 41 S. Ct. 612, 65 L. Ed. 1123, has no application.

[2] In short, the provision of the sales contract, "names * * * of steamers to be declared later," was for the seller's benefit only, and he could waive it. The cases were cited below; but see, also, Borrowman v. Free, 4 Q. B. D. 500. Reduced to its lowest terms, Smith Company was entitled to a certain quantity of Java sugar f. o. b. Philadelphia, and shipped in August-September; that agreement was fulfilled.

Judgment affirmed, with costs.