LAMBORN ET AL. *v.* THE NATIONAL BANK OF COMMERCE OF NORFOLK.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 163.   Argued January 12, 1928.—Decided April 9, 1928.

On behalf of a client who had agreed to buy and pay for Java sugar upon delivery f. o. b. cars at Philadelphia, a bank issued a letter of credit to meet the sellers' drafts, which provided, among other conditions, that shipment be made by steamer or steamers from

. Java to Philadelphia. *Held* that the condition was complied with where the consignment came from Java to Philadelphia by a steamer originally destined from Java " to Port Said, option New York," but which was diverted while on the high seas, so that she pursued the same route to Philadelphia as if she had been destined to that port from the beginning of the voyage. P. 471.

15 F. (2d) 473, reversed.

CERTIORARI, 273 U. S. 688, to a judgment of the Circuit Court of Appeals, affirming a judgment for the respondent bank in an action by the petitioners to recover damages for the bank's refusal to honor a sight draft drawn against a letter of credit. See also 2 F. (2d) 23.

*Mr. Louis O. Van Doren,* with whom *Messrs. Edward R. Baird, Jr., H. G. Connor, Jr.,* and *Edward S. Bentley* were on the brief, for petitioners.

*Mr. Tazewell Taylor* for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This action was brought in the federal court for eastern Virginia by Lamborn & Company, of New York City, against The National Bank of Commerce of Norfolk. The jurisdiction of the District Court rested upon diversity of citizenship. The plaintiffs sought damages for the refusal to honor a sight draft drawn against a letter of credit, given pursuant to a contract of T. S. Southgate & Company to buy 1,000 bags of Java white sugar at 22 cents per pound less 2%, duty paid, f. o. b. Philadelphia, landed weights. Payment was to be made in New York City upon presentation of sight draft with invoice and railroad order notify bill of lading attached. The letter of credit provided: " Shipment to be made during August/September, 1920, at option of the sellers from Java by Steamer or Steamers to Philadelphia."

The sugar tendered had been shipped on the West Cheswald, a steamer which sailed from Java on September 30,

and by a continuous voyage arrived in Philadelphia on December 16. Then followed promptly the discharge of 1,000 bags of sugar; the ascertainment of the net landed weight; the payment of the duty; the shipment free on board railroad cars at Philadelphia of the specified quantity of sugar to T. S. Southgate & Company; the drawing against the letter of credit of a sight draft for the purchase price, $48,009.81; its presentation, together with the appropriate shipping documents, for payment; and the refusal to honor. All this was done long before the expiration of the letter of credit. Between April 23, 1920, the date of the contract, and the tender of the sugar, the market price had fallen 11 cents.

The Bank claimed that the sugar tendered failed to satisfy the requirements of the contract, because it had come, not on a steamer which had been continuously destined from Java to Philadelphia, but upon one which, originally destined from Java " to Port Said, option New York," was diverted by the charterers to Philadelphia, while on the high seas. The West Cheswald had sailed by a direct route from Java to Philadelphia, the diversion having been made while she was near Bermuda, about three days from port, so that she could pursue the same route to Philadelphia as if she had at all times been destined for that port. In fact, another steamship bearing sugar shipped by plaintiffs—the Washington Maru—which sailed from Java two days earlier and had at all times been destined to Philadelphia, arrived there three days after the West Cheswald. The case was tried twice before a jury. The only question in serious controversy was one of construction—the meaning to be given to the clause in the letter of credit quoted above. At the first trial both parties requested a directed verdict. The verdict was directed for the plaintiffs. The Court of Appeals reversed the judgment entered thereon and ordered a new trial. 2 F. (2d) 23. At the second trial, the presiding

judge, applying the rule declared by the appellate court, directed a verdict for the defendant. The judgment entered thereon was affirmed by the Court of Appeals, 15 F. (2d) 473. This Court granted a writ of certiorari, 273 U. S. 688, because of conflict with cases decided by the Circuit Court of Appeals for the Second Circuit, *Matthew Smith Tea, Coffee & Grocery Co.* v. *Lamborn* (and other cases), 276 Fed. 325, 10 F. (2d) 697, certiorari denied, 271 U. S. 683, 685, 686.

The defendant is obviously not liable unless there was a tender of sugar which met with the requirements of the letter of credit as to amount and quality of the sugar, as to the time, *Norrington* v. *Wright*, 115 U. S. 188, and the place, *Filley* v. *Pope*, 115 U. S. 213, of shipment; and as to the manner of shipment and the ultimate destination.[1] The clause "shipment by Steamer or Steamers to Philadelphia" states the manner of shipment and the ultimate destination. Compliance with its provisions was confessedly a condition of liability. The Bank contends that there was not a compliance because the sugar tendered did not come by a steamer which at all times since leaving Java was destined to Philadelphia.

We find nothing either in the words of the letter of credit, in the custom of the trade, or in reason, which justifies implying the condition that, from the inception of the voyage, Philadelphia must have been the destination intended. The transaction is not like the ordinary contract for goods to be shipped. It is not like the common c. i. f. contract for shipment from a foreign to an American port, where delivery to the ship at the port

---

[1] Compare *Bowes* v. *Shand*, 2 App. Cas. 455; *Ashmore & Son* v. *Cox & Co.*, [1899] 1 Q. B. 436; *Landauer & Co.* v. *Craven & Speeding Bros.*, [1912] 2 K. B. 94; *Hansson* v. *Hamel & Horley, Ltd.*, [1922] 2 A. C. 36; *Merchants Bank* v. *Griswold*, 72 N. Y. 472; *Bank of Montreal* v. *Recknagel*, 109 N. Y. 482; *Mora y Ledon* v. *Havemeyer*, 121 N. Y. 179; *Iasigi* v. *Rosenstein*, 141 N. Y. 414.

of lading is delivery to the purchaser.    Nor is it like those contracts where shipment is to be made by a named vessel.    Here, the contract was for a sale f. o. b. cars Philadelphia—and the buyer was not to acquire any interest in the sugar, legal or equitable, until so delivered.    Thus, the contract resembles that involved in *Filley* v. *Pope*, 115 U. S. 213, upon which the Bank relies.    But the question for decision here is an entirely different one.    There the contract of sale provided for a " shipment from Glasgow."    The meaning of the words used was clear; the question was as to their legal effect.    Was shipment from Glasgow a condition?    This Court held that it was. Here it is admitted that the term " shipment from Java by Steamer or Steamers to Philadelphia " is a condition. The only question is whether that phrase means not merely that the sugar must be shipped by steamer from Java to Philadelphia, but also that the steamer which carried it must, from the inception of the voyage from Java, have been continuously destined to Philadelphia. No such requirement is stated in the contract.    While the original letter of credit had required the seller to furnish a copy of the " Ocean Bill of lading covering shipment Java to Philadelphia," that requirement had been eliminated on the seller's representation that compliance with it would be impracticable under the form of shipment contemplated; and its inclusion in the letter must be deemed to have been inadvertent.    As was said in *Harrison* v. *Fortlage*, 161 U. S. 57, 63: " The court is not at liberty, either to disregard words used by the parties, descriptive of the subject matter, or of any material incident, or to insert words which the parties have not made use of."

The plaintiffs were entitled to a directed verdict.    The conclusion which we have reached is in accord, not only with that reached by the Circuit Court of Appeals for the Second Circuit, but also with that of the state courts which have had occasion to construe the same provision

in other contracts of Lamborn & Company made under like circumstances.[2]   As the letter of credit is complete in itself, we have no occasion to consider the terms of the contract between Lamborn & Company and T. S. Southgate & Company, or the circumstances which led to the diversion of the West Cheswald to Philadelphia, which counsel have discussed.

*Reversed.*

Mr. Justice Stone, dissenting.

I think the judgment below should be affirmed.   I cannot agree that a condition in a commercial letter of credit, that drafts are to be drawn against merchandise " shipment . . . from Java by Steamer or Steamers to Philadelphia " is satisfied by a shipment " from Java to Port Said, option New York," even though the cargo ultimately reaches Philadelphia.   I had supposed, as the opinion below seems to me to show, that the character of a shipment is fixed at the time it is made, and hence that language in a mercantile contract indicating that a shipment is to be made from one point to another could only mean that the point of destination is to be known and specified at the time of shipment.   *Hannson* v. *Hamel & Horley, Ltd.,* [1922] 2 A. C. 36; *Landauer & Co.* v. *Craven & Speeding Brothers,* [1912] 2 K. B. 94; *Mora y Ledon* v. *Havemeyer,* 121 N. Y. 179; *Iasigi* v. *Rosenstein,* 141 N. Y. 414, 417.

But even if this were doubtful as a general proposition, there would seem to be no room for doubt in the present

---

[2] *H. O. Wilbur & Sons, Inc.* v. *Lamborn,* 276 Pa. 479, 487; *Williams Ice Cream Co., Inc.* v. *Chase National Bank,* 120 N. Y. Misc. 301; 210 App. Div. 179; *J. Hungerford Smith Co.* v. *Lamborn,* 200 N. Y. Supp. 292; *Telling Belle Vernon Co.* v. *Lamborn,* N. Y. Law Journal, December 22, 1920; *Pennsylvania Milk Products Co.* v. *Lamborn* (*and other cases*), N. Y. Law Journal, January 4, 1921.   See also *Central Sugar Co.* v. *Lamborn,* 200 N. Y. Supp. 499, 195 App. Div. 909; *Lamborn & Co.* v. *Log Cabin Products Co.,* 291 Fed. 435; *Lamborn* v. *Hardie Co.,* 1 F. (2d) 679.

case. Here the letter of credit specified that drafts when presented should be accompanied by " copy of ocean bill of lading covering shipment Java to Philadelphia." Obviously such a bill of lading would be impossible unless the shipment were continuously destined for Philadelphia. It is true that, for the convenience of the seller, the bank, at the buyer's direction, later waived physical presentation of a copy of the ocean bill of lading. But the record does not show that the bank had any reason to suppose that the requirement had originally been inserted in the letter of credit by mere inadvertence; so far as it was aware, there was still to be an " ocean bill of lading covering shipment Java to Philadelphia," but the seller was to be excused from presenting it. The clause " shipment   .   .   . from Java by Steamer or Steamers to Philadelphia " was not waived and its meaning on the date of presentation of the draft remained the same as when the credit was issued. The provision in the letter of credit that " conditions embodied in this credit must be adhered to, otherwise payment will not be effected," only expresses the rule, with which we all agree, that liability upon a mercantile contract may be established only by strict compliance with its conditions. *Filley* v. *Pope,* 115 U. S. 213; *Norrington* v. *Wright,* 115 U. S. 188; *Bowes* v. *Shand,* 2 App. Cas. 455.

Mr. Justice McReynolds, Mr. Justice Sutherland and Mr. Justice Sanford join in this dissent.