CROCKER COMMERCIAL SERVICES, INC., Plaintiff,

v.

COUNTRYSIDE BANK, Defendant.

No. 81 C 1257.

United States District Court, N. D. Illinois, E. D.

Dec. 30, 1981.

Alan E. Richards, Richards & Ralph, Chtd., Lincolnshire, Ill., for plaintiff.

Michael L. Weissman, Leon Zelechowski, Boorstein & Weissman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Crocker Commercial Services, Inc. ("Crocker") sues Countryside Bank ("Bank") for having dishonored Bank's $20,000 irrevocable letter of credit (the "Letter of Credit") in Crocker's favor as beneficiary, issued for the account of Bank's customer Everyone's Effort, Inc. ("Effort"). Crocker and Bank have filed cross-motions for summary judgment. For the reasons stated in this memorandum opinion and order Crocker's motion is granted and Bank's is denied.

### Facts [1]

Crocker, a California corporation, is a wholly owned subsidiary of Crocker National Bank engaged in the factoring business. It provides financial services to manufacturers and suppliers of clothing, in part by purchasing accounts receivable generated by their sales of that clothing. On January 17, 1980 its corporate name was changed from Crocker United Factors, Inc. to Crocker Commercial Services, Inc.

Some two weeks later Bank issued the Letter of Credit to Crocker reading in relevant part (emphasis added to indicate the material language for purposes of this action):

Drafts must be accompanied by:

Your signed statement certifying that the funds drawn hereunder are due you on account of Everyone's Effort, Inc., failure to pay, within terms quoted therein, *invoice(s) issued to them by Crocker Commercial Services*, I IBM Plaza, Suite 3335, Chicago, Illinois 60611 that demand for payment has been made and the funds have not been forthcoming from Everyone's Effort, Inc., or any other source.

Crocker proceeded to factor the accounts receivable of its several customers who sold clothing to Effort. Concurrently with each sale the resulting account receivable was assigned to Crocker on the invoices pre-printed with legends reflecting the assignment and identifying the assignee as Crocker United Factors, Inc.[2]

Crocker made every reasonable effort to collect from Effort but was not successful. On January 16, 1981, within the extended period of the Letter of Credit (which by renewal was to expire January 21, 1981), Crocker delivered to Bank its $20,000 sight draft and the following certification (again emphasis has been added for the same reason as above):

We hereby certify that the funds drawn hereunder are due us on account of Everyone's Effort Inc.'s failure to pay, within terms quoted therein, *invoices issued to them by factored clients of Crocker Commercial Services, and which are assigned to Crocker Commercial Services*, 1 IBM Plaza, Suite 3335, Chicago, Illinois 60611. We also certify that demand for payment has been made, and the funds have not been forthcoming from Everyone's Effort, Inc. or any other source.

Although not required to do so Crocker accompanied the draft and certification by copies of the underlying invoices and a summary schedule on a "Crocker United Factors, Inc." form, listing past due invoices aggregating $37,392.50. Its forwarding letter concluded:

Please use the enclosed return envelope for your payment, otherwise it may result in unnecessary delays in processing. If you have any questions, please retain all documents and place an urgent telephone call to the undersigned at (312) 853–3460.

Instead Bank waited until the Letter of Credit had expired and wrote Crocker January 30, 1981 stating:

---

1. This fact statement is based on the parties' stipulation (including documents incorporated as part of the stipulation).

2. Apparently most of Crocker's customers continued to use invoice forms with its old corporate name, although a few of the invoices did name Crocker Commercial Services, Inc. as assignee.

The documents on their face are not in accordance with the terms and conditions of the credit.

It referred to the disparity in language reflected by the emphasis in the previous quotations and the fact that the accompanying invoices and the invoice schedule were those of Crocker United Factors, Inc. and not Crocker Commercial Services. This action followed.

### Applicable Law

■ This diversity action (Bank is an Illinois corporation) looks to Illinois conflict of laws rules under *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under the test employed by the Illinois courts (*Cook Associates, Inc. v. Colonial Broach & Machine Co.*, 14 Ill. App.3d 965, 971, 304 N.E.2d 27, 31–32 (1st Dist. 1973)) Illinois substantive law applies, for Bank issued the Letter of Credit here to Crocker at its Chicago office for the account of Effort, an Illinois-based customer.

### Crocker's Substantial Compliance

This time of year invariably brings forth a spate of dramas in which the hard-hearted banker is the villain, sometimes regenerate (Scrooge in Dickens' *Christmas Carol*), sometimes unregenerate (as in Frank Capra's *It's a Wonderful Life*). By chance this is the second occasion during the past two weeks [3] in which the Court has had to deal with the unregenerate type—which tries to extricate itself from an unquestioned obligation by the kind of hypertechnical argument that has often tended to give the term "banker" pejorative connotations.

■ Illinois law however rejects Bank's position. Last year's decision in *First Arlington National Bank v. Stathis*, 90 Ill. App.3d 802, 814–16, 46 Ill.Dec. 175, 185–86, 413 N.E.2d 1288, 1298–99 (1st Dist. 1980) turned away from the "traditional standard" of strict compliance to confirm that *reasonable* compliance with a letter of credit entitles beneficiary to payment.

Under a fair application of the *First Arlington* reasonable compliance doctrine, Crocker is clearly entitled to payment:

(1) Its certification conformed *precisely* to the Letter of Credit by referring to "Crocker Commercial Services." Although it gratuitously enclosed documents that referred to "Crocker United Factors, Inc.," and though that disparity might possibly have relieved Bank of responsibility had it been a real discrepancy,[4] the fact is that *no discrepancy existed.* Crocker United Factors, Inc. *was* Crocker Commercial Services, and Bank will not be permitted to palter with justice by its less than specious argument. Because the same corporation was involved, the change in corporate name does not negate "reasonable compliance."

(2) Bank's parsing of the language to distinguish invoices "issued . . . by Crocker" from invoices "issued by factored clients of Crocker . . . and . . . assigned to Crocker" is pretextual and will also not be allowed to prevail. Bank's Letter of Credit agreed to guarantee credit extended by Crocker for the account of Effort, and that is precisely what took place—albeit by factoring the sale of goods to Effort instantaneously with such sales. Moreover the accompanying documenta-

---

**3.** See this Court's opinion in *American Employers Insurance Co. v. Pioneer Bank and Trust Co.*, 538 F.Supp. 1354 (N.D.Ill. 1981), in which the same *First Arlington* decision relied on in the text of this opinion defeated similar efforts by a bank to escape just liability.

**4.** Bank seeks to rely on Article 7 of the Uniform Customs and Practices for Documentary Credits (1974 revision), incorporated by reference in the Letter of Credit. Crocker however points out that UCC § 5–114(1), Ill.Rev.Stat.

ch. 26, § 5–114(1), deals with *"specified* documents," so that the issuer cannot predicate dishonor on *unspecified* documents. *Pastor v. National Republic Bank*, 76 Ill.2d 139, 151, 28 Ill.Dec. 535, 540, 390 N.E.2d 894, 899 (1979); *First Arlington*, 90 Ill.App.3d at 807–08, 46 Ill. Dec. at 180–82, 413 N.E.2d at 1293–94. Crocker has the better of the argument under Illinois law, so that Bank would not be successful even on its own terms. In any case the text analysis defeats Bank on independent grounds.

tion (on which Bank seeks to rely so heavily for its other purposes) discloses the facts plainly. Crocker's six-page billing *directly* to Effort refers to and itemizes "invoices." *First Arlington's* standard of reasonable compliance is unquestionably satisfied.

### Bank's Waiver or Estoppel

■ There is another and self-sufficient ground that, though not mentioned by either party, also defeats Bank's nit-picking position. Bank's conduct may fairly be viewed as creating either a waiver or an estoppel, for it stood by silently and permitted the Letter of Credit to run out, even though an identification of the claimed deficiencies would have enabled Crocker to cure them.

Crocker hand-delivered its draft, certificate, accompanying documents and forwarding letter to Bank January 16, 1981 (a Friday). Under UCC § 5–112(1) Bank was given "until the close of the third banking day following receipt" to pay the draft, failing which it was dishonored. No Illinois case has decided whether the day of receipt is counted for that purpose (in which case Bank would have had to notify Crocker of dishonor by the close of the banking day January 20) or is not counted (in which case the date would be January 21).[5]

If Bank had to notify Crocker *before* the Letter of Credit expired January 21, *First Arlington* would again point the way, for it confirms the doctrine of waiver in connection with the dishonor of letters of credit, 90 Ill.App.3d at 812, 46 Ill.Dec. at 183, 413 N.E.2d at 1296. This Court will simply quote from its opinion in *American Employers* (see n.3), 538 F.Supp. at 1357:

> That argument [that failure to respond waives objections to the demand under a letter of credit] has force as to many kinds of defective compliance by a benefi-

ciary. In *First Arlington* the Bank was held to have waived all objections not specifically stated in its pre-litigation refusal to honor the letter of credit. It should follow a fortiori that an issuer's failure to present *any* objections waives *all* objections. If *First Arlington* were not so applied, the issuer would be better off to raise *no* objections. But the whole point of requiring a response is to enable the beneficiary to correct any curable defects. By failing to provide any indication of why an issuer is dishonoring a demand the issuer forces the beneficiary to file suit. *See Barclays Bank D.C.O. v. Mercantile National Bank*, 481 F.2d 1224, 1236–37 (5th Cir. 1973).

*First Arlington* is further supported by the Illinois Code comment to Section 5–114:

> A party may be precluded from raising the issue of conformity on grounds of waiver or estoppel. *Continental National Bank v. National City Bank*, 69 F.2d 312 (9th Cir. 1934); *Lamborn v. National Bank of Commerce*, 276 U.S. 469, 48 S.Ct. 378 [72 L.Ed. 657] (1928); *Consolidated Sales Co. v. Bank of Hampton Roads*, 193 Va. 307, 68 S.E.2d 652 (1952).

Other jurisdictions are in accord. *Barclays Bank D.C.O. v. Mercantile National Bank*, 481 F.2d 1224 (5th Cir. 1973); *Chase Manhattan Bank v. Equibank*, 550 F.2d 882 (3d Cir. 1977).

For that reason the failure to make timely objection is a waiver of any curable flaws in the beneficiary's demand. Had Bank voiced its objections to Crocker at any time through January 20, Crocker could have cured the hypertechnical language difficulties now relied upon by Bank.[6] It is only equitable to apply the doctrine of waiver—if the time sequence permits—to bar Bank's purported defenses.

---

**5.** Nor does the stipulation indicate whether Saturday, January 17 was a banking day for Bank. It it were the relevant date would be one day earlier on either hypothesis.

**6.** If Crocker had delivered a certification in verbatim compliance with the Letter of Credit,

Bank would not have been entitled to go *behind* the certification. *Pastor; First Arlington; Baker v. National Boulevard Bank*, 399 F.Supp. 1021, 1024 (N.D.Ill.1975). Crocker would of course have been liable to *Effort* were that certification *false*.

It would seem more reasonable, though, to construe UCC § 5–112(1) to exclude the day of receipt from the three-banking-day count. If so (and if the factor referred to in n.5 is inapplicable) Bank could have deferred honor of the draft until the close of the January 21 banking day, in which event the Letter of Credit would have expired.

Though *waiver* could not then be held to have occurred, the situation nonetheless calls for invocation of an *estoppel* against Bank. Each of the matters it now relies on was apparent on the face of the certification—Bank needed no time for investigation. Indeed Bank's arguments simply contrast the language of the certification and accompanying documents with the literal language of the Letter of Credit. Had Bank done what Crocker reasonably requested in the form of an "urgent telephone call" identifying the now-alleged problems, Crocker could have timely delivered a conforming document. All the classic components of estoppel are present.

Accordingly alternate grounds of waiver or estoppel serve to support summary judgment in Crocker's favor. It should be stressed that this holding is independent of the doctrine of "reasonable compliance," which alone requires the same result.

### Conclusion

There is no genuine issue as to any material fact, and Crocker is entitled to a judgment as a matter of law. Crocker's motion for summary judgment is granted, while Bank's is denied. Because Crocker has not identified the basis for its prayer that it be allowed reasonable attorney's fees, this opinion does not rule on that aspect of its motion.