PENNSYLVANIA SUGAR CO. v. CZARNIKOW–RIONDA CO.

(Circuit Court of Appeals, Third Circuit.   November 17, 1917.)

No. 2267.

SALES ⟨Key⟩71(3)—CONTRACTS—CONSTRUCTION—"CARGO."

Defendant executed a contract reciting sale to plaintiff of 25,000 to 30,000 bags of Cuban sugar, to be shipped per steamer or steamers to be named as soon as possible.  The contract provided that insurance should be covered by buyer, including risk of lighters at ports of loading and discharge, and for payment to seller in six days from the date of delivery of shipping documents to buyers for net amount of invoice.  Plaintiff objecting that the contract did not contain all the items agreed upon, defendant's broker wrote a letter stating that, in reference to the contract, the understanding at the time of the sale of the cargo was that the drafts to be drawn against the cargo were to be made payable in Philadelphia, plaintiff's place of business, and that, should there be any demurrage, the same should be settled for on the basis of net registered tonnage.  Plaintiff returned the contract, with a letter stating that the contract for the sale of from 25,000 to 30,000 bags of sugar had been accepted.  Before any ship had been chartered, the actual furnisher of the sugar chartered a vessel, loading it with 32,000 bags of sugar.  The price of the sugar having appreciated between the date of the contract and the arrival of the vessel at plaintiff's place of business, plaintiff claimed the whole of the shipment, on the theory that the word "cargo," used in reference to the contract by defendant's broker, embraced the whole shipment.  *Held* that, while the word "cargo" is primarily the load of the ship, it may carry a varying meaning, and in view of the contract, and the provisions for shipment on several ships, plaintiff was not, defendant seller having the option of delivering 25,000 to 30,000 bags of sugar, entitled to more than 25,000 bags; this being particularly true, as defendant could not have required plaintiff to accept any sugar in excess of 30,000 bags.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cargo.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by the Pennsylvania Sugar Company against the Czarnikow-Rionda Company.  There was a judgment for defendant, and plaintiff brings error.  Affirmed.

William B. Linn and H. B. Gill, both of Philadelphia, Pa., for plaintiff in error.

Frank R. Savidge and William F. Corliss, both of New York City, and Edwin Booth, for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge.   In this action the plaintiff, a purchaser of raw sugar from the defendant, was nonsuited in the effort to recover damages for failure to make a full delivery.  The defendant shipped 32,000 bags from Cuba to Philadelphia, and the plaintiff received 25,000 bags; the remaining 7,000 being the quantity in dispute.  The plaintiff sets up a right to the whole 32,000, while the defendant contends that 25,000 bags completely fulfilled the contract.

The facts (either undisputed, or in accord with the plaintiff's evidence) are as follows:

The Pennsylvania Company is a Philadelphia refiner, and the Rionda Company is a dealer in Cuban sugar, having an office in New York City, and transacting part of its business through John F. Craig & Co., a firm of brokers in Philadelphia. So far as appears, Craig & Co. were not authorized to make final contracts of sale. Shortly before June 16, 1914, the Pennsylvania Company and Craig & Co. negotiated concerning the sale of sugar, and agreed upon certain terms provisionally. The brokers sent these on to New York for approval, and in due course the following written form of agreement, dated June 16, signed by the Rionda Company, and identified as "Contract V 329," was returned to the brokers to be accepted by the Pennsylvania Company:

"New York, June 16th, 1914.

"To Messrs. Pennsylvania Sugar Company, Philadelphia, Pa.:

"We have this day sold to you for account of Czarnikow-Rionda Company, New York:

"Quantity: Twenty-five thousand to thirty thousand (25/30,000) bags * * * of Cuba centrifugal sugar.

"Shipment or clearance: To be shipped cleared during August, 1914, first half, not before 5th.

"Destination: Per steamer, or steamers, to be named as soon as possible, for Philadelphia. * * *

"Price: At two and seven-sixteenth ($2^7/_{16}$¢) cents per pound. Cost and freight, basis ninety-six (96°), average outturn polarization, net landed weights.

"Payment: To be made to Czarnikow-Rionda Company by cash in New York in six (6) days from date of delivery of shipping documents to buyers, for the net amount of the invoice, or by sellers or Czarnikow-Rionda Company drawing on buyers at six (6) days' sight for the net amount of the invoice with shipping documents attached.

"Delivery: Sugar to be delivered at a customary safe wharf or refinery, as directed by buyers. * * *

"Marine insurance: To be covered by buyers from shore to shore, including risk of lighters at ports of loading and discharge.

"Czarnikow-Rionda Company,

"[Signed] Manuel E. Rionda, Vice President.
"Brokers."

Craig & Co. presented this writing to the Pennsylvania Company for acceptance, but were informed that it did not contain all the terms that had been agreed upon. Thereupon the brokers communicated with the Rionda Company and were authorized to write the following letter:

"Philadelphia, June 17th, 1914.

"Messrs. Pennsylvania Sugar Co., Philadelphia—Dear Sirs: Referring to contract V 329, dated June 16th, 1914, the understanding at the time of sale of this cargo was that the drafts to be drawn against this cargo were to be made payable in Philadelphia; also that, should there be any demurrage, the same was to be settled for on the basis of net registered tonnage. The sellers, Messrs. Czarnikow-Rionda Company, authorize us to herewith confirm these conditions and same become part of contract above named.

"Yours truly,                     [Signed]   Jno. F. Craig & Co.,
"Brokers for Messrs. Czarnikow-Rionda Co., New York."

Upon the receipt of this letter, the Pennsylvania Company signed the writing dated June 16, and returned it to Craig & Co. with the following letter:

"June 18th, 1914.

"Messrs. John Craig & Company, 143 South Front Street, Philadelphia—Gentlemen: We are enclosing herewith contract dated June 16th between the Pennsylvania Sugar Company and Czarnikow-Rionda Company in New York, covering the sale of from 25,000 to 30,000 bags Cuba centrifugal sugar at $2^7/_{16}$ cents a pound, for shipment the first half of August, 1914, not before the 5th. The contract has been accepted by Mr. McCarthy, secretary and treasurer of this company.

"Very truly yours,        Pennsylvania Sugar Company,
           "[Signed] Russel Spruance."

The two writings of the 16th and 17th are therefore to be taken together as the contract, and upon their construction the decision of the controversy depends. But, in order to give a full account of the transaction, a few more facts should be stated. At the time of signing the contract, it does not appear that any vessel had been chartered or was in contemplation, and we are not informed whether the Rionda Company then owned or controlled the necessary quantity of sugar. But on June 23 one Domingo Nazabal (who apparently furnished the sugar to fill the contract) chartered the steamship St. Andrews, and on July 24 Craig & Co. telephoned to the Sugar Company that the ship was loading with about 33,000 bags, writing on the same day that the St. Andrews was loading against "contract V 329, June 16, 25/30,000 bags of Cubas." The charter called for "a full cargo of 30,000 bags" giving the ship an option of 5 per cent. more or less, but the vessel loaded 32,000 bags, marked uniformly and stowed indiscriminately, and sailed for Philadelphia on August 5. Four bills of lading were made out, one for 15,000 bags, a second for 10,000 bags, and two others for 5,000 and 2,000 bags respectively. On August 4 the bill for 15,000 bags was presented to the Pennsylvania Company, with an approximate invoice and a draft for $109,000, and this was accepted and paid. On August 11 the Pennsylvania Company in compliance with its request received a copy of the charter party, and on the same date was presented with the second bill of lading for 10,000 bags, with an approximate invoice and a draft for $72,000 "to close contract No. V 329." The ship had not yet arrived, but the price of raw sugar (which had gone down somewhat during the whole month of July) had risen on account of the war to $5\frac{1}{2}$ cents; the rise being rapid after August 3. Before accepting and paying the second draft the Pennsylvania Company telephoned to Craig & Co. that it was entitled to the whole cargo, and to this Craig & Co. assented, whereupon the draft was paid. The vessel arrived in Philadelphia on August 13, and 25,000 bags were delivered to the Pennsylvania Company and accepted, the remaining 7,000 being delivered to another refiner.

Craig & Co. had no authority, either to make or to construe the contract; as we view the matter, the whole agreement between the parties is contained in the two writings, and the conclusion of the district court was correct. The question may perhaps be stated thus: Was the express and definite provision of the contract that calls for a specified quantity of sugar within the limits named so modified by the word "cargo" as to lose its apparent meaning, and to take on the new meaning of a whole shipload, a load that exceeds the maximum limit? It

is true that a "cargo" is primarily the load of a ship; but the word, like many another, may carry a varying content, and the question of its scope in a given contract under given circumstances cannot be decided by confining the court's inquiry to its abstract meaning. We must determine what scope the parties gave it in this contract, and our opinion is that the meaning here is the same as the meaning of the definite phrase, "25,000 to 30,000 bags of Cuba centrifugal sugar." There can be no doubt that the writing of June 16, unaffected by the letter of June 17, would have been satisfied by the delivery of 25,000 bags, and we find little in the letter that indicates a different conclusion. The letter is dealing directly with two subjects only—payment in Philadelphia, instead of in New York, and the settlement of possible demurrage—and the reference to the quantity of sugar is indirect and incidental. No doubt the sugar is spoken of as "this cargo"; but we think this is no more than the writer's allusion to the large quantity (correctly described as a cargo) that had already been distinctly specified, and therefore did not need to be specified again. The letter, which was satisfactory to the Pennsylvania Company, does not indicate that the parties intended to deal with a third subject and to make another change in the terms of the writing dated June 16; it does indicate that they had in mind two subjects only and were dealing with them in plain language —changing one term of the writing, the place of payment, and adding a provision about demurrage that had not yet been referred to at all. The subject of quantity had already been expressly provided for, and if they had intended to change that also we think it likely that the method of change would have been as definite as in the other two instances, and would not have been left to the hazard of a passing reference.

Moreover, it is important to remember that, while the duty of delivering the sugar lay upon the Rionda Company, there was no obligation to deliver it as a single cargo in a single ship. Unless the privilege of delivery by "steamer or steamers" be disregarded, the bags could be brought to Philadelphia on one steamship or on more than one. The Pennsylvania Company was to take out marine insurance from shore to shore, but it had nothing further to do with the vessels or the voyage, except to point out the wharf at which the bags should be delivered; its chief concern was to get the sugar, no matter how many vessels should be needed for carriage. And this leads to the question, how much sugar did the Pennsylvania Company buy? If the word "cargo" were not in the contract, the answer would be plain, namely, from 25,000 to 30,000 bags, at the seller's option. But, as the letter of June 17 put "cargo" into the contract, the effect of introducing it must have been one of two things—either to strike out the figures and substitute "cargo," or to let the figures stand and add "cargo." If we strike out the figures, we have a contract for a "cargo" pure and simple; and who is to determine how many bags it is to comprise? Presumably it must be carried on a single vessel (and this would strike out also, and by implication, the word "steamers"), and as the seller is to furnish the vessel without restriction, would he fulfill the contract by chartering a vessel that would carry only 10,000 bags, or even a smaller number? And, if this would not fulfill such a contract, why would it not? Sure-

ly the parties did not intend to leave the quantity in such uncertainty, and we turn therefore to the other possibility—that "cargo" is to be added to the writing. We then have a contract for a cargo of 25,000 to 30,000 bags, and the question is: How much can the buyer demand under such an agreement? It may be that he could not be compelled to take more than 30,000 bags; he might perhaps say: "I contracted for a whole shipload, a single thing; but its maximum was to be 30,000 bags, and I decline to accept more than I bought." But that is not now the point; the question is: How much may he lawfully demand? He has bought a shipload, but the limits of the load are fixed, and the contract will be fulfilled if the load does not exceed 25,000 bags, and in no event is it to exceed 30,000 bags. Where, then, does he get the right to demand the whole of a load whose quantity exceeds by 2,000 bags the maximum limit in his agreement, and exceeds by 7,000 bags the minimum limit that he would have been bound to accept as a good delivery? Without prolonging the discussion, we conclude that the word "cargo," as used in this contract, does not mean a whole shipload, but does mean the quantity specified, and for this reason we see no occasion to consider in this opinion the cases where the word in other contracts has been held to bear a different meaning—e. g., Kreuger v. Blanck, 5 L. R. Exch. 179; Borrowmen v. Drayton, 2 L. R. Exch. 15. A decision closely in point is Standard Ref'y v. Castano (C. C.) 43 Fed. 279.

The judgment is affirmed.

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes