[Civ. No. 5081.   First Appellate District, Division Two.—January 24, 1925.]

## NEW YORK OVERSEA CO., INC. (a Corporation), Appellant, v. WARFIELD–PRATT–HOWELL CO. (a Corporation), Respondent.

[1] SALES — INDEFINITE TERMS — DEFINITION BY PARTIES — JUDICIAL CONSTRUCTION. — Where a contract for the sale of a given commodity uses such terms as "about" and "more or less," in connection with the specification of the quantity, and no definition of such terms is agreed upon by the parties, the contract presents some ambiguity, and some opportunity for judicial construction; but where the parties have exactly defined their terms, such definition is as binding a part of their contract as any other part.

[2] ID. — USE OF TERM "ABOUT" — CONTRACT DEFINITION. — Where a contract for the purchase and sale of "about" a specified quantity of a given commodity provides that "It is understood that where the word 'about' appears in this contract, it shall mean 10% over or under," such contract is simple and unambiguous; and, under such circumstances, full effect must be given to the agreement of the parties.

[3] ID.—ALTERNATIVE OBLIGATION — ELECTION OF SELLER. — Where a contract for the purchase and sale of "about" a specified quantity of a given commodity provides that ."It is understood that where the word 'about' appears in this contract, it shall mean 10%

---

1. Meaning of "about" as applied to quantity, note, **Ann. Cas.** 1918D, 693. See, also, 23 **R. C. L.** 1352, 1353.

over or under," the seller has the option to deliver any amount of such commodity within such ten per cent limit.

[4] ID. — BAD FAITH OF SELLER — EVIDENCE. — The seller under such contract is not chargeable with bad faith in a legal sense because he tenders to the buyer the maximum amount of such commodity after the price has decreased.

---

(1) 35 Cyc., p. 206, n. 59. (2) 35 Cyc., p. 206, n. 60. (3) 35 Cyc., p. 205, n. 52. (4) 35 Cyc., p. 205, n. 53.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John L. Hudner, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Hadsell, Sweet & Ingalls for Appellant.

Ira S. Lillick and Theo. M. Levy for Respondent.

LANGDON, P. J.—This is an appeal by the plaintiff from a judgment against it in an action brought to recover something over $5,000, damages suffered by reason of the failure of defendant to accept and pay for twenty tons of sugar, alleged to have been purchased by said defendant from the plaintiff. The only question presented at the trial and upon appeal is as to whether the quantity of sugar in question was purchased by defendant under the admitted contract between the parties. This contract contained the following provisions pertinent to our inquiry: After naming the buyer and seller, and the commodity sold, it continued: "Quantity: (About) two hundred (200) tons (each 2240#)." The price was then specified and other conditions, immaterial here, after which appears the following: "It is understood that where the word 'about' appears in this contract, it shall mean 10% over or under."

Many of the facts were agreed to by stipulation of the parties. No question is made as to the quality of the sugar nor as to the fulfillment of any of the conditions binding upon the seller, and it is agreed that upon the arrival of the vessel containing the sugar, the plaintiff tendered to the defendant 220 tons of the same. Two hundred tons were accepted and paid for by the defendant. However, the

price of sugar had decreased between the time of the signing of the contract and the arrival of the sugar in San Francisco, and the defendant objected to accepting the maximum amount called for by the contract. It was agreed that the twenty tons of sugar in dispute should be sold at the market price and the defendant's liability for the difference between that amount and the price it had contracted to pay for the sugar should be submitted to the court.

[1]   The trial court concluded that the contract provisions hereinbefore quoted obligated the defendant to accept only 200 tons of sugar. Respondent seeks to support this decision by citing cases in which such terms as "about" and "more or less" were used in connection with the specification of an amount of merchandise, but in all of those cases the definition of such terms was not agreed upon by the parties and, therefore, the contracts presented some ambiguity, some opportunity for judicial construction. Such cases are not in point here, because, as appellant points out, the parties have exactly defined their terms, and such definition is as binding a part of their contract as any other part.

[2]   There is no situation presented in the instant case which invites construction of the contract. The contract is simple and unambiguous, and the invariable rule in this and every other jurisdiction, under such circumstances, is to give full effect to the agreement of the parties.

[3]   It is appellant's position that the contract in this case gave the seller an option to deliver any amount of sugar between 180 and 220 tons. Reliance is placed upon the following cases: *Wheeler* v. *New Brunswick & Canada R. R.*, 115 U. S. 29 [29 L. Ed. 341, 5 Sup. Ct. Rep. 1061, 1160, see, also, Rose's U. S. Notes], in which it was said: "We concur with the Circuit Court in holding that when Wheeler & Co. say, we bought of you (the railroad company), 'from two to six hundred tons for delivery in New York, or New Haven, between August 1st and October 1st' *they agreed to accept any amount of old rails between those limits.* The company was selling old rails. It knew that by August it would have a thousand tons. It did not know how much more they would have by October 1st. It intended to secure the sale of what it might have between two hundred and six hundred tons.

"Besides, as it was bound to do the first act in performance of the contract by delivering the iron, the option, if there was one, was with the railroad company."

Another case closely analogous to the present one is *Standard Sugar Refinery* v. *Castano*, 43 Fed. 279. There the contract was for a sale of 700 to 800 tons of sugar. The seller chartered a vessel which carried more than 800 tons of sugar. When the vessel arrived the price of sugar had risen and the seller tendered the buyer 700 tons of sugar out of the cargo. The buyer claimed that it was entitled to more than 700 tons, but accepted 700 tons and litigated his right to a larger amount. The court said: "The only question in this case is whether the plaintiff is entitled to recover any damages for breach of the contract which was made. The contract called for a cargo of from 700 to 800 tons of sugar. It appears that 700 tons of sugar were delivered to the plaintiff at the contract price. . . . I am of opinion, as the defendants might have performed their contract by shipping a cargo of 700 tons, that in assessing damages for a breach of the contract, they may select that alternative which is the least burdensome to themselves."

In the case of *Pennsylvania Sugar Co.* v. *Czarnikow-Rionda Co.*, 245 Fed. 913 [158 C. C. A. 201], the sale was of 25,000 to 30,000 bags of Cuban sugar. In the correspondence between the parties the word "cargo" was used. The seller shipped 32,000 bags from Cuba to Philadelphia. The price of sugar having increased before the arrival of the same, the buyers claimed that the use of the word "cargo" entitled them to more than 25,000 bags. The court decided against this contention and said: "And this leads to the question how much sugar did the Pennsylvania Sugar Company buy? If the word 'cargo' were not in the contract, the answer would be plain, namely, from 25,000 to 30,000 bags, at the seller's option."

In the case of *Illinois Glass Co.* v. *Three States Lumber Co.*, 90 Ill. App. 599, the sale was of 3,000,000 to 4,000,000 feet of lumber. The court there said: "We can discover no ambiguity in the contract and it seems to us remarkably clear and free from any fault of that character.

"Inasmuch, then, as appellant's counsel have argued the case upon the theory that by the terms of the contract appellant had a legal right to call upon appellee to deliver to

appellant, free on board of the cars at Alton, as well as at Cairo, 4,000,000 feet of lumber, and upon failure to so make the delivery, appellee became liable to appellant for a breach of the contract and as appellee's counsel have argued the case upon an exactly opposite theory as to the delivery of the extra 1,000,000 feet over 3,000,000 feet, we feel it may be unjust to the parties not to consider and determine the only question actually raised in the case by them, which is, with which party did the option rest, to complete the sale of the 1,000,000 feet of lumber above 3,000,000 feet? It is well settled law, that parties may make contracts binding only on one side at the time when entered into but which may thereafter become binding upon both sides at the option of one of the parties to it, and the contract sued on in this case is of that character; but the option to make the contract complete was not given to either party in express terms; and assuming for the present that, from anything appearing in the contracts, it was not given by implication, it remains only for the law to decide with whom the option rests.

"On this question there seems to be scarcely any disagreement among the authorities, as substantially all hold to a rule that would give the option to appellee, since it would have to do the first act to make the contract complete, by delivering the lumber. (Citing many authorities.)"

It seems well settled by the foregoing authorities that where parties make a contract for the purchase and sale of merchandise between certain limits, the option is with the seller to determine the amount to be delivered by him within those limits. Upon the same principle, when parties have used the word "about" in their contract and have exactly defined such term, the option is with the seller to deliver within the quantitative limits expressed by the definition of such term. It is said in Williston on Sales, section 464: "The addition of the qualifying words 'about,' 'more or less' and the like, in such cases, is only for the purpose of providing against accidental variations arising from slight and unimportant excesses or deficiencies in number, measure or weight. If, however, the qualifying words are supplemented by other stipulations or conditions which give them a broader scope or a more extensive significancy, then the contract is to be governed by such added stipulations or conditions."

And now coming to our own state, appellant cites the case of *Jacobson Reimers Co.* v. *Tozai Co.*, 42 Cal. App. 178 [183 Pac. 466]. There the contract was for the purchase and sale of choice dressed turkeys "numbering from two hundred head up to twelve hundred." No turkeys were delivered and action was brought for damages for breach of contract. The court said: "What, then, is the rule governing alternative obligations? Counsel seem to have explored the cases and the text-books with diligence for light, and the written opinion of the learned trial judge shows that he examined with much care the authorities upon the question. The provisions of our Civil Code seem to have been overlooked although they apparently state the rule applicable to the present case.

" 'If an obligation requires the performance of one of two acts, in the alternative, the party required to perform has the right of selection, unless it is otherwise provided by the terms of the obligation.' (Civ. Code, sec. 1448.)

" 'If the party having the right of selection between alternative acts does not give notice of his selection to the other party within the time, if any, fixed by the obligation for that purpose, or, if none is so fixed, before the time at which the obligation ought to be performed, the right of selection passes to the other party.' (Id., sec. 1449.) . . .

"Referring to the number of turkeys to be delivered, the language of the obligation is, 'numbering from two hundred head up to twelve hundred,' and as to the time of delivery the obligation is, 'between now (its date) and Thanksgiving' (November 29th). Plainly the statute gave defendants the right to deliver any number of turkeys from two hundred to twelve hundred 'between' the date of the obligation and November 29th. Defendants, admittedly, neither offered to nor did deliver any number of turkeys between 'now and Thanksgiving' or at all, but, as the court found, refused to deliver any. In such case, by the terms of the statute, 'the right of selection passes to the other party.' "

There is no claim that the election as to the quantity of sugar ever passed to the buyer in the instant case, for it was stipulated that upon the arrival of the sugar at San Francisco, the seller tendered to the buyer 220 tons.

It would seem that the citation of further authority is unnecessary, but it is interesting in considering the question

before us to find our position sustained by an English case closely analogous to the instant case (*In re Thornett and Fehr, etc.* [1921], 1 K. B. 219). There the contract was for the sale of "200 tons, five per cent more or less" of tallow. The court said:

"The third question is whether as a matter of law the arbitrators ought to treat the contract as being a contract for 200 tons, or whether they are at liberty at their discretion to treat it as a contract for 190 tons or 210 tons or any number of tons falling between those limits. The answer to that question is that the contract is for the number of tons specified in the document—that is, for '200 tons, 5 per cent more or less.' That means that the sellers would be performing their obligation under the contract if they delivered 5 per cent less than the 200 tons or 5 per cent more than the 200 tons. It is a provision which is inserted into the contract for the sellers' protection, and it gives them a margin within which to deliver, so that they are not bound to deliver exactly 200 tons, but within 5 per cent of the quantity, whether more or less. Their legal obligation under the contract was to deliver at least 190 tons, and if they had delivered 190 tons they would have performed the contract, that is to say they would have delivered the quantity which could be enforced against them under the contract. In my opinion the damages which can be claimed against the sellers in this case are not damages for nondelivery of 39 tons, the balance between 161 and 200 tons, but for nondelivery of 29 tons allowing for the 5 per cent less than the 200 tons. Although one is naturally much impressed by the view of the Board of Appeal who are familiar with contracts of this kind, I do not think we can give effect to their view that the phrase '5 per cent more or less' operates only to cover incidental or unimportant variations from the quantity stated in the contract. There could not be an inquiry if the sellers had delivered within 5 per cent more or less of the 200 tons as to whether the delivery of the 5 per cent more or less was occasioned by accident or inadvertence or whether it was a deliberate act. The truth is that it was intended by the contract to give the sellers an option of delivering either 5 per cent more or 5 per cent less than the 200 tons, or any quantity between those limits."

[4] The contention of the respondent in the case before us that the tender of the maximum amount of sugar after the price had decreased was evidence of bad faith is without legal force. The most that can be said of this aspect of the case is that it indicated a lack of generosity, but we cannot charge a seller with bad faith in a legal sense because he insists upon the full benefit of a contract which he has made. Such procedure is the usual course of business and the buyer must have known when he signed the contract that the seller would probably elect to furnish the minimum or maximum amounts called for thereunder according to whether the price of sugar increased or declined. There is no element of either good or bad faith involved in the transaction since the seller is merely insisting upon the express and unambiguous provisions of his contract with the defendant.

The findings of fact are such as to warrant the entry of a judgment thereon for the appellant herein, the plaintiff in the trial court. They follow, for the most part, the stipulation of the parties as to the matters therein recited, including the making of the contract, its terms, the tender of 220 tons of sugar and payment for 200 tons; the difference of $5,095.94 between the contract price of twenty tons of sugar and its selling price in the open market after the refusal of the defendant to accept the same. The finding that 2,009 bags of sugar, containing approximately 200 tons were marked with certain letters, while the remaining twenty tons tendered to defendant were marked with different letters is immaterial. Respondent urges this circumstance upon our attention as an evidence of bad faith; but, as we have stated, we do not consider such an issue involved in the case. The statement in the findings that the sale between the parties provided for by the terms of the contract was for 200 tons of sugar is a conclusion of law. We are of the opinion that no judicial construction of this contract was permissible since its terms are clear and unambiguous, and it is also true that any conclusion as to its legal effect is not binding upon this court as a finding of fact.

The findings of fact binding upon appeal demand a judgment for the appellant for $5,095.94. The judgment is reversed, with directions to the trial court to enter a judgment for plaintiff in accordance with the views herein expressed.

Sturtevant, J., and Nourse, J., concurred.