## Lamborn & Company, Appellants, *v.* Apollo Supply Company.

*Sales—Contracts—Interpretation—Amounts—Percentage of varia-tion.*

By a contract for the sale and delivery of "1000 bags, 10% more or less," of sugar to be imported by the vendor, he reserves the right

to determine the quantity between 900 bags and 1100 bags to be delivered, and if 1100 bags are tendered the buyer must receive and pay for them: (a) the vendor is the first actor; (b) and such provision is construed as inserted for his protection.

A vendor's declaration of the vessel carrying the sugar as required by the contract, is not an election of the quantity to be delivered, in the absence of evidence that it was intended to be so considered.

Argued April 29, 1926.   Appeal No. 169, April T., 1926, by plaintiffs, from judgment of C. P. Allegheny County, April T., 1923, No. 2320, in the case of Arthur H. Lamborn, Victor R. Hess, Gerard P. Tameling, Charles C. Riggs, Henry B. Hutchings, Clarence G. Troup, Karl E. Lindgren, George H. Logan, N. Nelson Keen and B. Wheeler Dyer, co-partners, doing business under the firm name of Lamborn & Company, v. James Demos and George Marinakos, co-partners, trading as Apollo Supply Company.   Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.   Reversed.

Assumpsit for goods sold and delivered.   Before SWEARINGEN, J.

The facts are stated in the opinion of the Superior Court.

Verdict for defendant in the sum of $1,102.71. Plaintiff appealed.

*Errors assigned,* were the charge of the Court, answers to points, and refusal of plaintiff's motion for judgment non obstante veredicto.

*Maynard Teall,* and with him *Reed, Smith, Shaw & McClay,* for appellants.—Under the ten per cent clause the sellers had the right to deliver not less than 900 and not more than 1100 bags: Thornett v. Fehr, 1 King's Bench 219; Pennsylvania Sugar Company v. Czarnikow-Rionda Co., 245 Fed. 913; New York Over-

seas Co. v. Warfield-Pratt-Howell Co., 234 Pacific 405; Russell v. Yglesias, 198 N. Y. S. 176; Standard Sugar Refinery v. Castano, 43 Fed. 279; National Bank of Commerce v. Lamborn, 2 Fed. 2nd Series, 23.

H. F. Stambaugh, and with him Watson & Freeman, for appellees, cited: 2 Williston on Sales, Sec. 464, pp. 1164, 1165, 1166; Cross v. Eglin, 2 B. & Ad. 106; Cockrell v. Aucompte, 2 C. B. N. S. 440; Moore v. United States, 196 U. S. 157, 168; Douglas Fir Exploitation & Export Co. v. Comyn Mackall & Co., 279 Fed. 203; Consol. Water Power & Paper Co. v. Louisville Herald Co., 211 Ill. App. 569.

OPINION BY LINN, J., July 8, 1926:

After plaintiffs had proved their claim, defendants counterclaimed against it for damages resulting from plaintiffs' alleged breach of contract to sell sugar to defendants. The court refused to direct a verdict for plaintiffs, and instructed the jury to find for defendants and to assess the damages. Plaintiffs moved for judgment n. o. v., and their motion was refused. Judgment against the plaintiffs was entered on the verdict as directed.

This appeal depends on the meaning of the contract which is the basis of the counterclaim. It provided: "We [plaintiffs] have this day sold to you for account of ourselves 1000 bags (of about 224 lbs. each) ten per cent more or less Java White sugars at twenty-two (22) cents per pound less two (2) per cent duty paid f. o. b. cars New York, Philadelphia and Baltimore. Shipment to be made during July-August 1920 at option of the sellers from Java by steamer or steamers to New York, Philadelphia or Baltimore. Names of such steamers to be declared later. Should steamer or steamers declared against this contract fail to arrive at port of destination for any cause, sellers are relieved of responsibility under

this contract........Payment to be made by net cash on presentation of sight draft with invoice and bill of lading attached in New York. Buyers to open within five (5) days confirmed irrevocable letter of credit in favor of [sellers.] for the full invoice value of 1100 bags with [designated bank]........"

Such a credit was established and on June 14, the Bank of Pittsburgh, for defendants, notified plaintiffs that a draft on defendants for $53,123.84, the purchase price of 1100 bags, would be honored. On August 23rd plaintiffs notified defendants: "We have received advices that the S/S 'Clan McBean' with your 1000 bags of Java sugar sailed from Java on August 15........" On October 13th they notified defendants that the steamship "is now in the port of Philadelphia with 1100 bags of sugar to apply against your contract of June 7 and we will endeavor to ship in the course of a few days." Defendants replied that they had purchased only 1000 bags and gave shipping instructions therefor, but plaintiff shipped 1100 bags. Defendants took the sugar saying, "The shipment of 1100 bags being thus forced on us, we wish to state to you that we shall sell the extra 100 bags for your account at the current market price and charge the difference in the price, which we will ask you to refund......" The fall in the price of the 100 bags was the basis of the counterclaim and of the recovery directed by the court as has been stated.

1. Our first inquiry is how much sugar must the sellers deliver to discharge their obligation. The trial court was of opinion that the provision "10% more or less" did not mean what it said, but that it "referred to subordinate matters which might thereafter arise and which neither could foresee at the time the contract was written; but those words did not give to either party the sole right to determine the quantity to be delivered without proof of why the change was made." That conclusion was said to be

sustained by precedents holding that indefinite expressions like "more or less," or "about," provided only against accidental variations arising from slight and unimportant excesses or deficiencies in number, measure, or weight (see Brawley v. United States, 96 U. S. 168, and Williston on Sales, 2d Ed., vol. 2, sec. 464).

On the other hand, appellants contend that the possible variation permitted by the expression "more or less" was exactly defined by the choice of a rate per cent of the 1000 bags agreed on, to wit: 10%; that the parties had thereby agreed that the quantity might be 1100 or 900 bags, or any quantity between those limits; that as the indefinitely qualifying words "more or less" were supplemented by the definite measure 10%, such definite effect must be given to it.

There is an obvious difference in the rule of decision applied in the cases supporting the view taken by the learned court below, and the rule applied in the decisions supporting the contention of appellants, and we have no doubt that this appeal should be determined by the precedents in which the qualifying words are precisely limited by a definite measure of variation and not those in which the qualifying words had no specific limits prescribed.

The point is, what did the parties intend. The sellers notified the buyers that they had sold to them 1000 bags of sugar to be imported from Java, 10% more or less, and the buyers accepted. The first thing to be done with the sugar after arrival at port of discharge was that the sellers must set it apart from the cargo at one of the ports mentioned, and place it ready for rail shipment to the buyers. The duty to act first in such circumstances has been held to be an element of importance in determining who had the option to select the larger or smaller quantity; in Wheeler v. R. R. Co., 115 U. S. 29, in considering the

sale by the railroad company to a buyer of 200 to 600 tons of old rails, it is said: (p. 38) "Besides, as it was bound to do the first act in performance of the contract, by delivering the iron, the option, if there was one, was with the railroad company." See Southern Publishing Co. v. Clements, (Tenn.) L. R. A. 1918, D. 580, and cases there cited in Note.

In addition to inquiring who must act first, light on the intention of the parties may be found by inquiring for whose benefit or protection the option exists. In Wheeler v. R. R. Co. (supra) this rule was also applied, for the court said (p. 38): "It [the railroad vendor] knew that by August it would have a thousand tons. It did not know how much more they would have by October 1. It intended to secure the sale of what it might have, between two hundred and six hundred tons"; see also Crystal Paper Co. v. Robertson Co., 289 Fed. 15, 17, 19. In determining the obligation of a seller who sold "200 tons, 5% more or less," of an article to be imported, the King's Bench Division held that arbitrators should treat it as a contract for 190 tons or 210 tons or any number of tons between those limits. The court (speaking by Lord Chief Justice READING) said: "The answer to that question is that the contract is for the number of tons specified in the document—that is, for '200 tons 5 per cent. more or less.' That means that the sellers would be performing their obligation under the contract if they delivered 5 per cent. less than the 200 tons or 5 per cent. more than the 200 tons. It is a provision which is inserted into the contract for the sellers' protection, and it gives them a margin within which to deliver, so that they are not bound to deliver exactly 200 tons, but within 5 per cent. of that quantity, whether more or less. Their legal obligation under the contract was to deliver at least 190 tons, and if they had delivered 190 tons they would have performed the contract, that is to say they

would have delivered the quantity which could be enforced against them under the contract....... Although one is naturally much impressed by the view of the Board of Appeal who are familiar with contracts of this kind I do not think we can give effect to their view that the phrase '5 per cent. more or less' operates only to cover accidental and unimportant variations from the quantity stated in the contract. There could not be an inquiry if the sellers had delivered within 5 per cent. more or less of the 200 tons as to whether the delivery of the 5 per cent. more or less was occasioned by accident or inadvertence or whether it was a deliberate act. The truth is that it was intended by the contract to give the sellers an option of delivering either 5 per cent. more or 5 per cent. less than the 200 tons, or any quantity between those limits.'': Thornet v. Fehr, 1921 K. B. 219. In New York Overseas Company v. Warfield-Pratt-Howell Co., 234 Pac. Rep. 405 (District Court of Appeals, Cal.) the contract was for the sale of "about 200 tons," but there was a provision that "it is understood that where the word 'about' appears in this contract it shall mean 10% over or under." The seller tendered 220 tons; the buyer accepted 200; the suit involved the liability for the 20 tons rejected. The court held that the buyer was liable for the 20 tons rejected. In Penna. Sugar Co. v. Czarnikow-Rionda Co., 245 Fed. 913, a contract for the sale and purchase of 25,000-30,000 bags of sugar was before the court and it was held that the seller had the option of delivering 25,000 or 30,000 bags and that the buyer could not insist on designating the quantity he would receive. See also Standard Sugar Refinery v. Castano et al., 43 Fed. 279. The plaintiffs were not manufacturers; the subject of the sale was to be imported from Java; the uncertainties of the crop, the contingencies affecting the availability of

vessels for shipping, their capacity, charter requirements and the like, might well justify a seller in retaining the right to control within specified limits the quantity he could be required to import; such provision is for his benefit or protection.

But the authority of these decisions, appellees say, is destroyed by cases like Taggert v. Brimfield, 281 Fed. 830, in which the seller agreed to sell and the buyer to take gravel for foundry purposes "in an amount of a minimum of 10,000 tons and a maximum of 25,000 tons commencing this day and to be in force one year from date......" It was held that the contract belonged to the common class in which a manufacturer had to provide in advance for a period of time for a supply of needed material the exact quantity of which he could not specify; "In this uncertainty," the court said, "he names a minimum, which on his part he positively agrees to take and he names a maximum up to, but not beyond, which the seller is bound to furnish. In this way both parties are protected." From the nature of the agreement it is clear that the parties when they made it, intended that the buyer would make the requisition as and when he needed the material, and that between the maximum and minimum specified, the seller would furnish the material; he was a producer, not an importer; the necessity of the enterprise for the year determines who had the option; it was for the buyer's benefit or protection and he was also the first actor, for he must send his requisition as his needs required. So, in Dimmick v. Banning et al., 256 Pa. 295, at page 300, the court states that "until the buyers indicated the quantity and place of shipment the sellers could do nothing. The burden of making the first move was, by the express terms of the contract, placed on defendants......" Stevenson v. Sun Co., 77 Pa. Superior Ct. 587, and other

342 LAMBORN & CO., Appellants, *v.* APOLLO CO.

Opinion of the Court.     [88 Pa. Superior Ct.

cases relied on by appellees are in the same class; see also Diamond A Co. v. Aetna Co., 264 Pa. 305, 308; Williston, Sales, supra. This group of cases is not inconsistent with our conclusion.

Moreover, the contract required that within five days from date of purchase the buyers must establish an irrevocable credit in the sellers' favor for the full invoice value of 1100 bags. The evidence is that "in compliance therewith defendants [buyers] did duly secure and deliver a letter of credit for [1100 bags—$53,123.84] which the plaintiffs accepted and used." While the sellers' purpose in requiring the buyers to establish such credit to cover delivery of the maximum, does not conclusively indicate that the option to deliver the maximum was with the sellers, it is not without influence on the point as appellees' brief recognizes. But there is nothing inconsistent with this view, as they seem to suggest, in Wilbur & Sons v. Lamborn, 276 Pa. 479, 482, etc. There by alleging a deviation in the transportation specified in the contract, that is—a total failure of performance, the buyers sought to get back from the seller the total credit against which the seller had drawn. The court held there was no material departure from the contract and that plaintiff sustained no loss by the manner of defendant's performance. In the case at bar, it is not suggested that there was any failure of performance, either as to the commodity or the manner of delivery, except as defendants contend that they should not have been required to take 1100 bags.

We are of opinion that the sellers were within their contract in shipping 1100 bags.

2. It is suggested, though not stressed, that the sellers' letter of August 23rd, stating that they had received advices that the steamer "with your 1000 bags of Java sugar," had sailed was an exercise of

the option and fixed the quantity deliverable at 1000 bags. That was only a declaration of the vessel as required by the contract and was not intended as and did not purport to be an election of the quantity to be delivered, (compare Wilbur & Sons v. Lamborn, supra).

As there was no dispute of fact and as defendants' counterclaim failed, it was error to direct a verdict for them; as plaintiffs' claim was not disputed, their point for binding instructions should have been affirmed.

The judgment is reversed and the record is remitted with instructions to re-instate plaintiffs' motion for judgment n. o. v:, and to make the same absolute.