# CASES

## ARGUED AND DETERMINED

### IN THE

## CIRCUIT COURTS OF APPEALS AND DISTRICT COURTS OF THE UNITED STATES, AND COURT OF APPEALS' OF THE DISTRICT OF COLUMBIA

---

**WELLS FARGO NEVADA NAT. BANK OF SAN FRANCISCO v. CORN EXCHANGE NAT. BANK.**

Circuit Court of Appeals, Seventh Circuit.
December 16, 1927.

Rehearing Denied January 24, 1928.

No. 3921.

1. **Banks and banking** ⊜⊐191—**Bank's written statement, on refusing to pay draft drawn against letter of credit, that documents were not in accordance therewith, held sufficient.**

Statement in writing, at time of bank's refusal to pay draft drawn against its letter of credit, that documents presented with draft were not in accordance with requirements of letter of credit, *held* sufficient.

2. **Banks and banking** ⊜⊐191—**Transaction under letter of credit is purchase of documents to be delivered thereby.**

The transaction under a letter of credit is a purchase of documents required to be delivered by such letter of credit.

3. **Banks and banking** ⊜⊐191—**Bank held justified in refusing payment of draft drawn against letter of credit requiring delivery of invoice, where invoice presented showed another's interest in merchandise.**

Where letter of credit required delivery of invoice, together with other documents, presenting invoice, showing that part of merchandise belonged to one and a part to another, justified bank's refusal to pay draft drawn against such letter of credit.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the Wells Fargo Nevada National Bank of San Francisco against the Corn Exchange National Bank. Judgment for defendant, and plaintiff brings error. Affirmed.

Frederic Burnham, of Chicago, Ill., for plaintiff in error.

Wm. Ritchie, Jr., of Omaha, Neb., for defendant in error.

23 F.(2d)—1

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Plaintiff (plaintiff in error) sued defendant (defendant in error) because of the latter's refusal to pay a draft, drawn against its letter of credit. The jury returned an instructed verdict for the defendant. So far as here material, the letter of credit reads:

"To the New York Oversea Company, Inc., No. 314 Cole Building, San Francisco—Gentlemen: We hereby authorize you to draw on the Corn Exchange National Bank, in Chicago, at sight for any sum or sums not exceeding in all four hundred twenty-five thousand dollars U. S. gold for account of Western and National Grocer Companies, Chicago, for invoice cost of eight hundred long tons (10 per cent. more or less) Java white sugar No. 25 Dutch standard, at $21.75 per 100 pounds net cash, duty paid c. i. f. San Francisco, to be shipped to various points from Orient in July, 1920. Railroad bills of lading, issued to the order of the shipper and indorsed in blank, together with invoices and Java weight certificates, must accompany drafts. The shipment must be completed and the drafts drawn by October 31, 1920. * * * "

[1] Plaintiff three times presented a draft for $425,000, with documents for 880 long tons of sugar, and each time payment was refused. Subsequently, that draft was withdrawn and plaintiff presented a draft for $389,544.89, accompanied by documents for only 800 tons, and it was paid. Later in October, 1920, the draft here in question for $35,455.11 was presented, with documents covering the remaining 80 tons, showing an invoice price of $39,002.97, and payment was refused. With each refusal, it was stated in writing that the documents were not in accordance with the letter of credit. That

was sufficient. Williston on Sales (2d Ed.) § 495. However, in the discussion at the various presentations, it was further made clear that the right to deliver more than 800 tons was contested, and that the documents were not in accordance with the letter of credit, because the cost of the sugar covered by them was greater than the face of the draft of which payment was refused.

[2] The question, viz., Did those documents comply with the requirements of the letter of credit? is the only one of the several questions here argued which we deem it necessary to answer. The transaction under a letter of credit is a purchase of the documents required to be delivered by the letter of credit. Old Colony Trust Co. v. Lawyers' Title & Trust Co. (C. C. A.) 297 F. 152, 155.

[3] Among other documents, required by the letter to be delivered, was an invoice. Necessarily, that meant a list or statement of the sugar sent from the Orient, which the defendant would have the right to receive under its documents, or which any one else taking the documents would have the right to receive. It could not mean that an invoice was to be issued, as was done in this case, which showed that part belonged to one and a part to another.

The invoice, presented with the draft for $425,000, shows that the sugar sold to the Western Grocer Companies cost $428,547.86. That invoice, numbered 249, also shows the following:

Total price...................... $428,547.86
Sight draft with documents attached as per letter of credit....  425,000.00

Balance by separate sight draft on Western & National Grocer..  $   3,547.86

On the date of the first draft presented to defendant, the Oversea Company drew a draft on Western Grocer Companies for $3,547.86. That draft was repeatedly presented to the latter concern, and payment refused. It was not accompanied by any documents other than an invoice, which showed that the draft was drawn for the—

Difference between price of sugar sold as per invoice No. 249 and amount provided by Corn Exchange National Bank of Chicago L/C No. 1613, dated May 18, 1920.............. $3,547.86

Bangs, the representative of the Oversea Company, who was assisting in the presentation of the drafts, testified that he said in one of the conferences: "We realized that the bank was in no way concerned with the draft for $3,547.86, and that we were prepared to give over all the documents upon payment of the $425,000 draft, and that we would look to the Grocer Companies for the balance."

Again he said: "We expected the Western Groceries to pay for the $3,547.86 draft. *So far as we know, no donation of the surplus of the sugar was ever offered to them.*" (Italics ours.)

Thus it was made plain that, if defendant accepted the documents tendered, it must do so knowing that they were not to become wholly the property of the bank for any purpose, but that they, on plaintiff's theory, in part belonged to defendant and in part to the Western Grocer Companies, which was denying the right to deliver anything more than 800 tons.

Letters of credit in large numbers for vast sums are used in oversea commercial transactions by people whose laws, language, and customs are often different from those of the people where the letter is issued. The safety of the issuing bank, of the buyer for whose account it is issued, and of the seller who often expends much and risks much on the faith of the promise in the letter, require that the terms of the letter shall be sharply defined and strictly complied with in all respects. If an issuing bank, under a letter of credit calling for documents, can be required to accept documents in which it shall have but a part interest, then the usefulness of the letter of credit, as one of the greatest aids to world commerce, will be ended.

Plaintiff suggests: "Suppose in this case, because of the unusual drop in the market price, the seller had told the buyer that it would not charge it the full contract price of $21.75 for the sugar, but that it would charge only 50 per cent. out of the goodness of its heart, and that, in conformity with its expressed generosity, it drew a draft for only 50 per cent. of the amount which 880 tons would be worth at $21.75 per 100 pounds, could the bank have refused the draft because the plaintiff was getting twice the amount of sugar which its dollars would buy at the contract rate? Of course not."

Whether that is a sound answer to the question is wholly immaterial here, because there was "no donation of the surplus of the sugar" in this case.

Great confidence is placed by plaintiff in the words "10 per cent. more or less" in the quantity provision of the letter. Reading the meaning of the letter within its four corners, as we must, we cannot find in it any justification for the attempt to deliver to defendant documents calling for sugar costing more than defendant's total obligation under

the letter. The consequences which might follow any construction of the letter of credit, calling for documents, that would permit the delivery of documents in which some one else has an interest are many and obvious.

We are of opinion that the court was right in instructing a verdict for the defendant.

Judgment affirmed.