## WESTERN GROCER CO. v. NEW YORK OVERSEA CO.

District Court, N. D. California, S. D.
October 12, 1928.

No. 16944.

William Ritchie, Jr., of Omaha, Neb., and Oliver Dibble and D. M. McKell, both of San Francisco, Cal., for plaintiff.

Hadsell, Sweet & Ingalls, Joe G. Sweet, and Robert L. Lamb, all of San Francisco, Cal., for defendant.

KERRIGAN, District Judge. This is an action for breach of contract by the buyer against the seller of certain sugar. The contract was entered into in May, 1920. The material terms are as follows:

"Quantity: (About) eight hundred (800) tons (each 2,240 pounds).

"Shipment: Java, during July, 1920.

"Price: $21.75 per hundred pounds, duty paid c. i. f. San Francisco.

"Payment: Net cash in San Francisco against seller's sight draft, with attached documents, consisting of bills of lading, Java weight certificates, and invoice. Upon consummation of sale, buyer to furnish in San Francisco irrevocable banker's letter of credit without recourse, and in accordance with terms of contract.

"Weights: Shipping weights final. * * * Each shipment mark, and/or tender, to be treated, adjusted, and settled separately. * * * It is understood that, where the word 'about' appears in this contract, it shall mean 10 per cent. over or under."

Other provisions of the contract place the risk of loss upon the seller, prior to delivery at San Francisco. On May 8, 1920, the buyer procured the required letter of credit in the sum of $425,000 from the Corn Exchange National Bank of Chicago, Ill., and on May 25, 1920, this letter of credit was amended in a particular immaterial here, at the request of the seller.

Prior to the time of entering into this contract the seller, the New York Oversea Company, had contracted to buy 2,000 tons of sugar in Java. This sugar was duly shipped from Java, part of it having been delivered for shipment at the port of Sama-

rang July 8, 1920, and part at Soerabaya July 17, 1920. The 2,000 tons of sugar arrived at San Francisco August 26, 1920, where it was inspected and accepted as to quality on behalf of the buyers September 2, 1920. On that date, September 2, 1920, the sellers informed the buyers that they intended to make delivery of 880 tons of sugar under the contract. In view of the fact that the sugar market had broken, the buyers strenuously resisted being given more than 800 tons of sugar, and maintained their position that the contract required them to take no more than this amount throughout the ensuing disputes over the delivery of the sugar.

At this time no documents had arrived from Java and the seller was not in position to make delivery. On September 13, 1920, the documents covering the sugar shipped from Samarang, which included four 201-bag lots, 80 tons, afterwards tendered to the buyers, arrived in San Francisco and were placed in the hands of the seller's bank. These documents were not in order, as required by both the contract and the letter of credit, in that weight specifications were forwarded, instead of weight certificates. These specifications were dated at a time after delivery of the sugar for shipment and amounted to a mere list of supposed weights.

Although constantly importuned by the buyer for information as to the arrival of the documents, the seller failed to mention either the arrival of documents covering the 80 tons they proposed to deliver, or to reveal their defective condition, which was not discovered by the buyer until the documents were presented to the Corn Exchange National Bank October 11, 1920. It attempted during the three weeks after September 13, 1920, to cure the defect, partly by waiting in the hope that further documents would arrive from Java, and partly by procuring certificates from the consul-general of The Netherlands at San Francisco, stating that the weight specifications were in fact the equivalent of weight certificates. These measures were ineffectual. The defect was never cured.

During the period from September 14 to September 21, 1920, the buyer was attempting to procure the delivery of 800 tons of sugar. It offered to waive weight certificates if the seller would limit its delivery to 800 tons. The sugar market was constantly falling, and the buyer was anxious to obtain possession of the sugar at the earliest possible moment.

On September 21, 1920, the documents covering the 800 tons arrived from Soerabaya, in order, and were received by the seller's bank. Knowing, however, that there was dispute over the amount to be delivered, and

apparently upon the suggestion of the seller, the bank delayed forwarding the documents and necessary drafts to Chicago until October 6, 1920, and then forwarded for original presentation a draft for $425,000, together with a sight draft on the buyers for $3,547.-86. This draft was rightfully rejected on October 13th [see Wells Fargo National Bank v. Corn Exchange National Bank (C. C. A.) 23 F.(2d) 1], and a second draft, for the price of 800 tons of sugar, in the amount of $398,544.89, was presented and paid, with notice to the seller that such payment was not an acceptance of the documents and the sugar. The seller having no Chicago agent, the documents were sent from Chicago to San Francisco, where they were tendered to the seller with a demand for repayment. This tender and demand being refused, the buyer resold the sugar for the seller's account for the sum (deducting proper charges) of $117,-274.45.

The buyer now sues to recover either the difference between the contract price and the resale price, or, failing this, such damages as may be found due on account of the delay in the presentation of documents by the seller. The seller has cross-complained for the difference between the contract and the resale price of the 80 tons of sugar for which the drafts were rejected.

The plaintiff alleges that the contract was breached by the defendant in three respects: First, that defendant attempted to make an overdelivery under the contract, insisting on delivering 880 tons, whereas plaintiff was required by the contract to take only 800 tons; second, that defendant procured insufficient insurance upon the sugar to comply with the contract; and, third, that defendant (a) delayed the forwarding of the necessary documents to San Francisco from Java, and (b) delayed the presentation of the documents after their arrival in San Francisco beyond a reasonable time.

■ Plaintiff cannot prevail upon either of the first two breaches assigned. The contract as drawn permitted the seller to deliver 10 per cent. more or less than 800 tons at its election. New York Oversea Co. v. Warfield-Pyatt-Howell, 70 Cal. App. 724, 234 P. 405. Accordingly, had a valid tender of 880 tons of sugar been made by the defendant, plaintiff would have been required under the contract to accept delivery of that amount. Under the contract the amount to be delivered might be determined at any time up to the tender of the necessary documents, and I regard it as immaterial that the sugar shipped by the seller from Java was "earmarked" by the seller in one lot of 8,030 bags (800 tons) and four smaller lots of 201 bags each (80

tons in all). The lot markings did not constitute an exclusive appropriation of the sugar to the plaintiff here, or any other buyer.

The breach assigned on account of the insurance is that insurance on the 800-ton lot of sugar was not taken out until July 25, 1920, five days after the shipment, and was for $379,250, instead of for $389,544.89, the contract price of the sugar, the difference being approximately the amount of duty the seller was to pay at San Francisco under the contract. In alleging that this constituted a breach of the contract, plaintiff rests upon the theory that this was a c. i. f. contract. It is true that the letters c. i. f. appear in both the contract and the letter of credit in describing the terms of payment. Further examination of the contract discloses, however, that it is not a true c. i. f. contract. The insurance policies are not required to be presented to procure payment. The risk of loss in transit falls upon the seller. The seller was at liberty, therefore, to exercise its own discretion in the matter of insurance protection, and plaintiff here is not in a position to question the time of issuance of the policy nor the amount.

On examining the evidence as to the third breach assigned, delay in delivery, I find the plaintiff entitled to damages. There are two respects in which defendant is charged with delay. The first charge is that defendant failed to procure a prompt completion and forwarding of the documents to San Francisco from Java. The sugar arrived in San Francisco August 26, 1920. The first set of documents, covering the four 201-ton lots, arrived September 13, 1920, and the second set, covering the 800-ton lot arrived on September 21, 1920. The evidence as to whether this delay was unreasonable within the contemplation of the parties, considering the nature of the contract and the known facilities for forwarding such documents from Java to San Francisco, is in sharp conflict; but, after consideration of it, I have reached the conclusion that the documents were not unreasonably delayed in reaching San Francisco, and that defendant did not breach the contract in this respect.

As to the second period of delay, that extending from the time when the last documents were received in San Francisco, September 21, 1920, to the time when they were forwarded to Chicago, I have reached a different conclusion. I find this delay to have been due to defendant's attempts to perfect the documents as to the 80 tons which it desired to deliver to plaintiff, and to have resulted in a tender of performance by defendant at an unreasonably late time.

During all of this period the sugar market was steadily falling. Time is of the essence in a mercantile contract. While no date for delivery was specified, a reasonable time was implied, and in view of the conditions, known to all parties, the "reasonable time" was short. Defendant was required to act with dispatch and promptness. I agree with the contention of plaintiff that the documents should have reached Chicago not later than September 26, 1920, instead of October 11, 1920.

Defendant was in this position: It had elected to deliver 880 tons of sugar under its contract, and notified plaintiff to this effect. Plaintiff's refusal to accept such delivery could have been treated by defendant as an anticipatory breach of the contract, had it so desired. It, however, elected to keep the contract alive. So doing, it must be ready, able, and willing to perform on its part at the time required by the contract. Its tender of performance was required to be made within a reasonable time; i. e., by September 26, 1920.

In determining the rights of plaintiff under these circumstances it is apparent in the first place that plaintiff cannot be required to respond in damages for failure to accept delivery of the four 201-bag lots of sugar. Even had defendant elected to rely upon an anticipatory breach by plaintiff on account of the advance refusal to take the full 880 tons of sugar, this would be true as to the 80 tons. One who is not ready, able, and willing to perform a contract upon the due day cannot recover for an anticipatory breach of the contract by the other party. Gray v. Smith (C. C. A. 9) 83 F. 824; Petersen v. Wellsville City (C. C. A. 8) 14 F.(2d) 38. In the present case the documents covering the four lots in question were defective, in that weight certificates were not furnished, and defendant could not and did not make a good tender of performance as to those lots under the contract.

Plaintiff is entitled to set up the defective character of these documents in this proceeding, and is not attempting thereby to "mend its hold" in the manner found objectionable in many cases. In the first place, the objection was promptly made on October 11, 1920, when for the first time the plaintiff saw the documents. In the second place, this objection goes to a matter which defendant could not (although it made every effort to do so) obviate. A party to a contract is not permitted to refuse to perform a contract upon one ground, and later to rely upon another ground, which might have been remedied, had it been called

to the attention of the performing party. The rule is different, however, where the new objection is one which could not have been remedied, especially where, as here, it is concealed from the objector during the early stages of the controversy. Gerli v. Poidebard Silk Mfg. Co., 57 N. J. Law, 432, 31 A. 401, 30 L. R. A. 61, 51 Am. St. Rep. 612; Mente v. De Witte Rice Mill Co. (C. C. A.) 251 F. 252; Williston on Contracts, §§ 743, 744.

Plaintiff is also entitled to raise the question of the effect of defendant's delay in performance, as its protests to defendant in this regard were continuous from the date of the arrival of the sugar to the time when the documents were finally presented. While delay was not the sole reason for objecting to the tender, defendant had certainly been well warned that plaintiff would raise this issue, should litigation follow, and, far from attempting to remedy this situation, was responsible for a delay of over two weeks in forwarding the necessary documents after those covering the 800-ton lot had arrived at San Francisco.

The loss to plaintiff, directly due to defendant's delay in forwarding the documents, as measured by the difference in market price on September 26, 1920, and on October 13, 1920, is $40,288.79. Although at the time of defendant's tender of performance plaintiff was still in default on account of its steady refusal to accept more than 800 tons of sugar, however good the tender of 880 tons might be, and hence not entitled to rescind the contract or claim full damages for the breach, plaintiff is entitled to recover the loss thus unnecessarily caused by defendant's delay in forwarding the documents.

Let judgment be entered for plaintiff (cross-defendant) and against defendant (cross-complainant) on the cross-complaint, and against the defendant in the sum of $40,288.79, with interest from October 13, 1920, and costs. Special findings have been requested by both parties. In view of this opinion, these motions for special findings will be denied, and exceptions noted.

So ordered.